# In the United States District Court
# Western District of Michigan

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> BARRY GORDON CROFT, JR., <br><br> Defendant. | Crim. No. 20-183-2 <br><br> HON. ROBERT J. JONKER |
| UNITED STATES ATTORNEY <br> Nils R. Kessler (P69484) <br> Assistant U.S. Attorney <br> 330 Ionia Avenue NW <br> Grand Rapids, Michigan 49501-0208 <br> (616) 456-2404 <br> nils.kessler@usdoj.gov <br> *Counsel for the United States* <br><br> BLANCHARD LAW <br> Joshua A. Blanchard (P72601) <br> 309 South Lafayette Street, Suite 208 <br> Greenville, Michigan 48838 <br> (616) 328-6501 <br> josh@blanchard.law <br> *Counsel for Defendant Croft* <br><br> BUTZEL LONG, P.C. <br> Robin Luce Herrmann (P46880) <br> Joseph E. Richotte (P70902) <br> Stoneridge West <br> 41000 Woodward Avenue <br> Bloomfield Hills, Michigan 48304 <br> (248) 258-1616 <br> richotte@butzel.com <br> *Counsel for BuzzFeed, Inc.* | **MOTION FOR ACCESS TO DETENTION HEARING EXHIBITS BY BUZZFEED, INC.** <br><br><br> **MEMORANDUM IN SUPPORT BY BUZZFEED, INC.** <br><br><br> **ORAL ARGUMENT REQUESTED** |

## TABLE OF CONTENTS

INDEX OF AUTHORITIES ................................................................. II

QUESTION PRESENTED .................................................................. III

PRELIMINARY STATEMENT ............................................................... 1

ARGUMENT .................................................................................. 2

    I.    The press and the public have a common-law right of access to the evidence admitted at the detention hearing ............................... 2

        A.    The parties' interest ..................................................... 3

        B.    The public's interest ..................................................... 5

        C.    The court's duty .......................................................... 7

CONCLUSION ................................................................................. 9

## INDEX OF AUTHORITIES

**Cases**

*Addington* v. *Texas*,
  441 U.S. 418 (1979) .................................................................................................. 2

*Detroit Free Press* v. *Ashcroft*,
  303 F.3d 681 (CA6 2002) ........................................................................................ 6

*Estes* v. *Texas*,
  381 U.S. 532 (1965) .................................................................................................. 4

*Foley* v. *Parker*,
  488 F.3d 377 (CA6 2007) .................................................................................... 4, 5

*Globe Newspaper Co.* v. *Superior Ct.*,
  457 U.S. 596 (1982) .................................................................................................. 1

*Irvin* v. *Dowd*,
  366 U.S. 717 (1961) .................................................................................................. 4

*Nixon* v. *Warner Commn'cs, Inc.*,
  435 U.S. 589 (1978) .............................................................................................. 1, 2

*Richmond Newspapers, Inc.* v. *Virginia*,
  448 U.S. 555 (1980) .................................................................................................. 5

*Sheppard* v. *Maxwell*,
  384 U.S. 333 (1966) .............................................................................................. 2, 4

*United States* v. *Beckham*,
  789 F.2d 401 (CA6 1986) ............................................................................ 1, 2, 7, 8

**Statutes**

18 U.S.C. §1201 .................................................................................................................. 8

18 U.S.C. §3142 ............................................................................................................ 2, 6

## QUESTION PRESENTED

 Do the press and the public have a common-law right of access to the exhibits which, although not filed on Pacer, were admitted into evidence at Mr. Croft's detention?

BuzzFeed respectfully submits this Memorandum in support of its Motion for Access to Detention Hearing Exhibits under Local Criminal Rule 12.1.

**PRELIMINARY STATEMENT**

The public has a substantial interest in closely observing the administration of justice in the prosecutions against the men accused of plotting to kidnap the governor of Michigan and privately try her for treason.  In a case of such gravity, judicial and prosecutorial accountability are of paramount importance.  The public has a right to be satisfied that the defendants are treated fairly, that their rights are respected, and that justice is done.  This necessitates public access to all proceedings and to all evidence admitted for and against the defendants in open court.

Until now, the public has had access to the exhibits offered at the preliminary hearing and the detention hearings in these cases.  That has changed with Mr. Croft's detention hearing.  The Government offered nine exhibits—photographs, decrypted text messages, audio recordings, and video—to support its request that Mr. Croft be detained pending trial.  The Court accepted those exhibits into evidence and expressly relied on them when it granted the Government's motion and ordered Mr. Croft detained pending trial.

BuzzFeed seeks access to those exhibits to vindicate the public's right of access. BuzzFeed is a global news organization and the world's leading independent digital media company.  As a member of the press, it has standing to pursue access to judicial records, including exhibits used in criminal cases.  See *Globe Newspaper Co.* v. *Superior Ct.*, 457 U.S. 596, 609 n.25 (1982); *Nixon* v. *Warner Commn'cs, Inc.*, 435 U.S. 589, 594–596 (1978); *United States* v. *Beckham*, 789 F.2d 401, 403 (CA6 1986).

The press and the public have a common-law right of access to the evidence admitted at Mr. Croft's detention hearing.  The purpose of a detention hearing is to judge whether the defendant is such a flight risk or danger to the community that no combination of conditions could reasonably assure the defendant's appearance or the

safety of the community. 18 U.S.C. §3142(e). The standard for detention is the second highest standard in the land—clear and convincing evidence, 18 U.S.C. §3142(f)(2)(B)—which reflects "the value society places on individual liberty." *Addington* v. *Texas*, 441 U.S. 418, 425 (1979). The recordings were the prime evidence supporting pretrial detention. Detention Hrg. Tr. 59:13–67:21, ECF 152, PageID.829–37. Without access to that evidence, the public cannot assess whether the Court properly detained Mr. Croft pending trial. An independent judiciary is a hallmark of republican government, but independence is not freedom from scrutiny. Given the presumption of access, and the important role that access plays in self-government, the Court should grant access to the requested evidence.

## ARGUMENT

### I. The press and the public have a common-law right of access to the evidence admitted at the detention hearing.

The Court should grant access to the evidence admitted at Mr. Croft's detention hearing under the common-law right of access recognized in *Nixon*. *Nixon*, 435 U.S., at 597 (the courts "recognize a general right to inspect and copy public records and documents, including judicial records and documents"). This ancient right existed long before the founding of our republic, and it is essential to informed self-government. *Id.*, at 598 (this right allows "the citizen … to keep a watchful eye on the workings of public agencies, and [the] newspaper publisher … to publish information concerning the operation of government." *Id.*, at 598 (cleaned up). "A responsible press has always been regarded as the handmaiden of effective judicial administration, especially in the criminal field. Its function in this regard is documented by an impressive record of service over several centuries." *Sheppard* v. *Maxwell*, 384 U.S. 333, 350 (1966). When a party wants to deny public access to judicial records, a court must weigh the party's interests in light of the public's interest and the duty of the court. *Beckham*, 789 F.2d, at 409.

### A.   The parties' interest

The parties will likely assert Mr. Croft's interest in a fair trial.  BuzzFeed acknowledges and respects that interest, but merely incanting it is inadequate.  The parties must show how the release of the exhibits from the detention hearing poses a substantial risk of prejudice to a fair trial.  Similar audio, visual, or documentary evidence admitted at the other defendants' detention hearings having already been released, the court should demand a serious explanation as to why the incremental release of these additional records would prejudice Mr. Croft.

When BuzzFeed asked for copies of the exhibits, the Government declined to release them, stating that "the timing of [this] request, the exhibits, defendant, and defense counsel are different," without further elaboration.[1]  EXHIBIT 1, Emails between Breane K. Warner, Public Information Officer for the U.S. Attorney's Office for the Western District of Michigan, and Ken Bensinger, Reporter for BuzzFeed News (Mar. 9–12, 2021).  The Government did not explain why these points should affect the public's common-law right of access in this instance.  *Ibid.*  As to the timing of the request, a trial in this case is most assuredly more than year away—there are hundreds, possibly thousands, of hours of recordings, PHT 245:5–10, ECF 54, PageID.286, and thousands of communications, PHT 121:25–122:9, ECF 39, PageID.153–54, that the parties must review.  Such remoteness between the publication and the future trial date renders any concern over a compromised jury venire entirely speculative.  As to the content of the

---

[1]   The Government also informed BuzzFeed that Mr. Croft's codefendants were afforded an opportunity to object to disclosure before the conclusion of the hearing in October 2020.  EXHIBIT 1.  Although there is no indication in the record of such an opportunity being afforded, see Preliminary Hrg. Tr. ("**PHT**") Vol. I, ECF 39; PHT Vol. II, ECF 54; Fox Detention Hrg. Tr. ("**DHT**"), ECF 55; Franks DHT, ECF 56; Caserta DHT, ECF 59; Harris DHT, ECF 60; and Garbin DHT, ECF 62, the Government informed BuzzFeed during the concurrence conference that the attorneys discussed and approved the release of exhibits with the court in chambers.  BuzzFeed therefore focuses only on the other justifications given.

exhibits, they are not so different from the evidence released after the codefendants' preliminary hearing and detention hearings that there is a greater risk of prejudice to Mr. Croft than to his codefendants.  Finally, BuzzFeed is aware of no caselaw holding that the mere identity of a criminal defendant and his attorney, without more, is sufficient to overcome the public's common-law right of access.

During the concurrence conference, Mr. Croft advanced nothing more than a general fear of prejudice and an inability to release discovery records to contextualize the recordings and show that they were taken out of context.  Protective Order ¶¶ 2, 4, ECF 107, PageID.615–16.  BuzzFeed takes no position on the terms of the protective order but notes that Mr. Croft is free to ask the Court to revisit his detention at any time and would be free to present the contextualizing evidence in support of that request.  18 U.S.C. § 3145(b).

For its part, the Government expressed during the concurrence conference a general concern over a potential appellate or habeas issue from prejudicial pretrial publicity.  If this case results in a guilty plea, the Rule 11 will almost certainly contain an appellate waiver that would sharply limit, if not practically eliminate, Mr. Croft's ability to challenge the release of the exhibits.  See, *e.g.*, Garbin Rule 11, ECF 142, PageID.755–56.  If the case goes to trial and Mr. Croft is convicted, there is little risk of reversal over the disclosure of the exhibits.

"Prejudice resulting from pretrial publicity can be presumptive or actual." *Foley* v. *Parker*, 488 F.3d 377, 387 (CA6 2007).  "Prejudice from pretrial publicity is rarely presumed." *Ibid.*  It requires an inflammatory circus-like atmosphere. See, *e.g.*, *Irvin* v. *Dowd*, 366 U.S. 717, 725 (1961) (carnival barker reporting and a barrage of provocative stories, cartoons, and statements from law enforcement showing a "pattern of deep and bitter prejudice"); *Sheppard*, 384 U.S., at 345–49 (summarizing a pattern of inflammatory news coverage and a fête-like jury site visit to a murder scene with hundreds of reporters and cameramen); *Estes* v. *Texas*, 381 U.S. 532 (1965) (presumptive pretrial prejudice

- 4 -

from coverage of the jury venire consisting of "12 cameramen … taking motion and still pictures and televising the proceedings [with c]ables and wires … snaked across the courtroom floor [and] three microphones … on the judge's bench [while] others were beamed at the jury box and the counsel table"). This is not BuzzFeed's aim.

Where pretrial prejudice cannot be presumed, the primary tool used to discern whether actual prejudice exists is a searching voir dire of prospective jurors to determine whether there is "community-wide sentiment" against the defendant. *Foley*, 488 F.3d, at 387. "Mere prior knowledge of the existence of the case, or familiarity with the issues involved, or even some preexisting opinion as to the merits, does not in and of itself raise a presumption of [a tainted jury]." *Ibid.* (cleaned up). Moreover, the community from which the jury venire is drawn consists of 24 counties stretched across roughly 250 miles with a population in excess of 2.1 million people. Compare Juror Selection Plan ¶ 4.a, https:// perma.cc/U3CW-YS8X, with Office of State Demographer, Michigan Population by County 2019 (Mich. Dept. of Mgmt. & Budget Apr. 1, 2021), https://perma.cc/H3GP-USUL. It is exceptionally unlikely that publication of detention hearing exhibits in the ordinary course of journalism would prevent the Court from seating an unbiased jury drawn from this District. Therefore, the Court should not find that a generalized concern about prejudicial pretrial publicity outweighs the public's common-law right of access.

**B.  The public's interest**

The public's interest here is in judicial oversight. "People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing." *Press-Enter. Co.*, 478 U.S., at 13. Public access is "an inestimable safeguard against the corrupt or overzealous prosecutor and against the compliant, biased, or eccentric judge." *Id.*, at 12–13. "Closed trials breed suspicion of prejudice and arbitrariness, which in turn spawns disrespect for law." *Richmond Newspapers, Inc.* v. *Virginia*, 448 U.S. 555, 595 (1980) (Brennan, J., concurring). As

- 5 -

Judge Damon Keith famously observed in a case about secret hearings, "democracies die behind closed doors … When government begins closing doors, it selectively controls information rightfully belonging to the people. Selective information is misinformation." *Detroit Free Press* v. *Ashcroft*, 303 F.3d 681, 683 (CA6 2002).  These precepts apply equally to evidence admitted in court but suppressed from public view.

BuzzFeed does not contend that the magistrate judge made the wrong call in ordering Mr. Croft to be detained pending trial.  Rather, it contends that the public has been deprived of judging for itself whether her call was the right one or the wrong one under the circumstances.  The magistrate judge ordered Mr. Croft to be detained even though he is presumed innocent and must be admitted to bail unless there are no combination of conditions that could reasonably assure his appearance and the safety of the community.  18 U.S.C. §3142(b), (c), (e), and (j).  Without seeing the evidence that she relied upon, it is impossible for the public to decide whether the detention order was appropriate or the product of politics given the identity of the alleged victim—the governor of Michigan.  Defense counsel have argued that these men were targeted for prosecution because they have unapologetically exercised their Second Amendment rights, while exercising their First Amendment rights to assemble and vehemently express antigovernment viewpoints, at a time when government has suppressed civil liberties on a scale never before countenanced in this country.  See, *e.g.*, PHT 242:14–253:1, ECF 54, PageID.283–94 (defendants' arguments against bindover).  The Government contends this is an apolitical prosecution where pretrial detention is warranted not because of the defendants' political views but because there is evidence that they will use violence to advance those views if admitted to bail.  See, *e.g.*, *id.*, at 253:24–257:10, ECF 54, PageID.294–98 (Government's rebuttal in favor of bindover).  Given the underlying political dynamic, it is vital the public be allowed to see the evidence and decide for itself whether the Court has maintained its independence and neutrality in such an important case.

### C. The court's duty

It is the duty of the trial court "to exercise an informed discretion as to release of the tapes, with a sensitive appreciation of the circumstances that led to their production." *Beckham*, 789 F.2d, at 409 (cleaned up). The Court must weigh several factors when exercising its discretion, including "the court's supervisory powers, the amount of benefit to the public from the incremental gain in knowledge that would result from [releasing the requested records], the degree of danger to the defendants or persons speaking on the tapes, the possibility of improper motives on the part of the media such as promoting public scandal or gratifying private spite, and any special circumstances in the particular case." *Ibid.* When weighing these factors together, with no one factor being conclusive, courts must apply a presumption in favor of access. *Ibid.* "A mere articulation of rational justifications will not suffice in this context. A district court must set forth ***substantial*** reasons for denying such requests." *Id.*, at 413 (emphasis added).

Without having seen or heard the evidence, it is difficult for BuzzFeed to address some of these factors. For example, BuzzFeed cannot speak to the degree of danger to the defendants or persons speaking on the tapes without having seen or heard the recordings. It can, however, analogize to the recordings that the Government introduced in October and provided to the press, the release of which posed no danger to the defendants or third parties. Absent exceptional facts that are not in the record, it is difficult to conceive how the audio/visual evidence admitted at Mr. Croft's detention hearing would pose a danger.

Other factors, however, favor release of the exhibits. The public would benefit because access is the only way that the public can truly decide whether the magistrate judge made an independent, neutral, and individualized assessment of Mr. Croft's alleged risk of flight and dangerousness to the community. There is also a rising perception of politically driven prosecutions.[2] Such polarized times call for greater transparency, not

---

[2] See, *e.g.*, Hauslohner, 'This is a political prosecution': After its members were charged in the Capitol riot, one group says it is more popular than ever, *The Washington*

less, to maintain the public's trust in the judicial system, especially in a case where, as here, the defendants are exposed to life sentences. 18 U.S.C. §1201(c) (conspiracy to kidnap is punishable by life or any term of years). BuzzFeed's stated purpose serves that legitimate aim. And the mere fact that the evidence could be published does not, alone, risk prejudice to Mr. Croft's interest in a fair trial. As the Sixth Circuit noted in *Beckham*, "sensational publicity does not necessarily deprive a defendant of a fair trial, nor does the broadcast of evidence necessarily interfere with a trial." 789 F.2d, at 410 n.3. See also Argument I.A, *supra* (discussing the standards for prejudice from pretrial publicity). And, as noted earlier, a trial in this case is most assuredly more than year away. Such remoteness between publication and the future trial date renders any concern over a compromised jury venire entirely speculative.

BuzzFeed also notes that there have been a series of high-profile cases within the last year where courts have ordered the release of recordings to the press. See, *e.g.*, Order Granting Motion of Media Coalition to Obtain Copies of Publicly-Filed, Body-Worn Camera Video Evidence, *Minnesota* v. *Lane*, No. 27-cr-20-12951 (Hennepin County Dist. Ct. Aug. 7, 2020) (ordering the release of body camera footage of an officer involved in the detention and arrest of George Floyd), available at https://publicaccess.courts.state.mn.

---

*Post*, Apr. 8, 2021, 2021 WLNR 11375778; Hurt, FBI's political jihad against American white whales, *Washington Times*, Apr. 2, 2021, 2021 WLNR 10695748; McArdle, Lack of Dem Indictments in Flint Water Probe Raises Concerns About Political Prosecution, *National Review*, Jan. 24, 2021, http://bit.ly/NatRevFlint; Currier, St. Louis judge disqualifies Kimberly Gardner, her office from prosecuting McCloskey gun-waving case, *St. Louis Post-Dispatch*, Dec. 11, 2020, 2020 WLNR 35400710 ("Circuit Judge Thomas Clark II's order said two fundraising emails that Gardner's reelection campaign sent in response to political attacks before and after she charged Mark and Patricia McCloskey with felony gun crimes in July raised the appearance that she 'initiated a criminal prosecution for political purposes.'"); Mack, Alan Dershowitz to Newsmax TV: NRA Move Political Prosecution, *Newsmax*, Aug. 6, 2020, 2020 WLNR 22207484 ("New York Attorney General Letitia James' announcement of a lawsuit to dissolve the National Rifle Association (NRA) reeks of selective prosecution that is being weaponized politically, according to legal expert Alan Dershowitz on Newsmax TV").

us/DocumentSearch; Milston, Police footage in Acevedo death to be released, judge rules, *Fox6 News Milwaukee*, May 5, 2021, https://perma.cc/F9VW-7B3L (ordering the release of redacted body camera footage in the case of an off-duty police officer involved in a fatal shooting).  The Government also recently dropped its opposition to the release of recordings used in the detention hearings of people charged in connection with the protest on Capitol Hill in January and has agreed to provide copies to the press.  *In re Application of CNN*, No. 21-mc-00034 (DDC Apr. 27, 2021), ECF 8, https://perma.cc/UN7M-3RLX.

With the presumption in favor of access, the weighty public interests at stake, and the factors of the balancing test supporting disclosure, the Court should order the Government to provide copies of the detention hearing exhibits to vindicate BuzzFeed's common-law right of access.

## CONCLUSION

For these reasons, BuzzFeed respectfully requests that the Court grant its motion and order that it be given copies of the exhibits admitted into evidence at Mr. Croft's detention hearing.

Respectfully submitted,

BUTZEL LONG, P.C.

Dated:  May 20, 2021

**JOSEPH E. RICHOTTE  P70902**

ROBIN LUCE HERRMANN (P46880)
JOSEPH E. RICHOTTE (P70902)
Stoneridge West
41000 Woodward Avenue
Bloomfield Hills, Michigan 48304
(248) 258-1616
richotte@butzel.com
*Counsel for BuzzFeed, Inc.*

BH3106900.2

## CERTIFICATE OF COMPLIANCE

Under Local Criminal Rule 47.2(b)(ii), BuzzFeed certifies that this brief contains 2,974 countable words, as calculated by the word count feature of the Microsoft Office 365 version of Microsoft Word.

Respectfully submitted,

BUTZEL LONG, P.C.

Dated: May 20, 2021

*JOSEPH E. RICHOTTE P70902*

ROBIN LUCE HERRMANN (P46880)
JOSEPH E. RICHOTTE (P70902)
Stoneridge West
41000 Woodward Avenue
Bloomfield Hills, Michigan 48304
(248) 258-1616
richotte@butzel.com
*Counsel for BuzzFeed, Inc.*

BH3106900.2