UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                      No. 1:20-cr-183

    vs.                                Hon. Robert J. Jonker
                                           Chief United States District Judge

BARRY GORDON CROFT, JR.,

                                           Hon. Sally J. Berens
        Defendant.                United States Magistrate Judge
_____/

**GOVERNMENT'S RESPONSE TO MOTIONS FOR ACCESS
TO DETENTION HEARING EXHIBITS**

The government does not oppose production of the exhibits introduced at defendant Croft's detention hearing to the movants. Because Croft opposes such production, however, the government submits the matter to the discretion of the Court.

FACTS

1. On October 7, 2020, the FBI arrested Croft's co-defendants (Adam Fox, Ty Garbin, Kaleb Franks, Daniel Harris and Brandon Caserta) in Michigan, pursuant to a criminal complaint charging them with conspiring to kidnap Governor Gretchen Whitmer. (R. 1: Complaint, PageID.1.) Croft was arrested in New Jersey on the same date, made his initial appearance in the District of Delaware, and deferred his detention hearing until his appearance in the Western District of Michigan. (R. 43: Rule 5 Documents, PageID.252.)

2. On October 13 and 16, 2020, this Court (Hon. Sally J. Berens, Magistrate Judge, presiding) held a preliminary examination and individual detention hearings for the co-defendants. (R. 32-50: Minutes.) The Court bound the co-defendants over and ordered them detained pending trial. (*Id*.) The courtroom was open to the public during the proceedings, and

public audio access was provided through a dedicated phone line. (Non-Document Notice from Chambers, Oct. 14, 2020.)

3. At the hearings, the government presented live testimony, documents, photographs, and audio and video recordings. After the conclusion of the proceedings, various media outlets requested copies of the admitted exhibits. The parties (the undersigned, the U.S. Attorney, and a representative for the combined defense counsel) retired to chambers to discuss the matter with the Court. There being no objection from the defense to publishing the admitted exhibits, the government provided copies to the press.

4. On December 16, 2020, a grand jury in this District charged all six defendants (including Croft) with conspiring to kidnap Governor Whitmer. (R. 86: Indictment, PageID.86.)

5. This Court arraigned Croft and conducted his detention hearing on January 13, 2021. (R. 131: Minutes, PageID.714.) The courtroom was open to the public, and public audio access was provided by telephone. (Non-Document Notice from Chambers, Jan. 13, 2021.) At the hearing, the government presented nine exhibits:

(1) Photograph of Croft with a "boogaloo" flag;

(2) Photograph of Croft with a tactical shotgun;

(3) (4) and (5) Audio recordings of Croft at "militia" group meeting meeting in Ohio;

(6) Video recording of Croft firing semiautomatic assault rifle at field training exercise ("FTX") in Wisconsin;

(7) Audio recording of Croft at FTX in Wisconsin;

(8) Photograph of highway bridge near Governor Whitmer's vacation home;[1]

(9) Photograph of Croft's modified semiautomatic assault rifle.

---

[1] This exhibit was also presented at the co-defendants' hearings, and has been published by the media.

6. On March 9, 2021, BuzzFeed.com requested copies of the exhibits admitted at Croft's detention hearing. (R. 193-2: Motion for Access, exhibit 2, PageID.1029.) The government noted that Croft's counsel had not consented to production of the exhibits, and suggested BuzzFeed raise the matter with this Court. (*Id.*)

7. BuzzFeed filed a motion for access to the detention hearing exhibits on May 20, 2021. (R. 193: BuzzFeed Motion for Access, PageID.1013.) BuzzFeed consulted with Croft's attorney and the government pursuant to L.Cr.R. 12.4, and accurately presented the positions of the parties. (R. 194: Certificate of Compliance, PageID.1033.) The government did not oppose the relief requested, but advised it would release the exhibits only after the Court had ruled on Croft's objection. (*Id.*)

8. Shortly after BuzzFeed's motion was docketed, counsel for The Detroit News and Scripps Media, Inc. asked the government if it would concur in a motion to provide them the same exhibits. The undersigned replied by e-mail that BuzzFeed's pleading accurately summarized the positions of the parties, and attached a copy of BuzzFeed's certificate of compliance (R. 194) for reference.[2] On May 21, 2021, The Detroit News filed its motion, which the Court has consolidated with BuzzFeed's for hearing on June 16, 2021. (R. 198: Detroit News/Scripps Motion for Access, PageID.1039; R. 201: Notice of Hearing, PageID.1050.)

9. The government intends to offer the exhibits in question against Croft at his trial in October 2021.

---

[2] The Detroit News/Scripps Media pleading states "concurrence was not obtained." (R. 200: Certificate of Compliance, PageID.1047). As noted in the BuzzFeed certificate, the government only opposes providing the exhibits over Croft's objection without the Court's permission.

3

LAW AND ANALYSIS

There is a presumptive common-law right of access to judicial records, but "it [is] not a constitutional right nor and absolute right, and [ ] courts in politically sensitive cases have a responsibility to consider both the public's interests and the court's duty of fairness in the administration of justice." *United States v. Beckham,* 789 F.2d 401, 409-10 (6th Cir. 1986) citing *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597-602 (1978). "[W]hile some other courts have held that this presumption can only be overcome by the most extraordinary of circumstances, the Sixth Circuit 'respectfully disagrees that only the most extraordinary reasons justify a restriction on the common-law right' to inspect and copy exhibits." *United States v. Dimora*, 862 F. Supp. 2d 697, 705-06 (N.D. Ohio 2012), citing *Beckham*, 789 F.2d at 414.

The decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case. *Beckham*, 789 F.2d at 409. The interests to be weighed include: (1) the Court's supervisory powers over its own documents; (2) the benefit to the public from the incremental gain in knowledge that would result from access to the materials in question; (3) the degree of danger to the petitioner or other persons mentioned in the materials; (4) the possibility of improper motives on the part of the media; and (5) any special circumstances in the case. *Id*.

As a threshold matter, the First Amendment right of access to exhibits is not necessarily implicated where the evidence was presented in open court. *Beckham*, 789 F.2d at 415 (videotapes in question played at a public court proceeding, and the press was free to report on the content of the videotapes.) That is particularly true where the court has made efforts to facilitate access to the trial proceedings, for example by reserving seats for the press or providing

a channel for remote viewing. *United States v. Mitchell*, 2010 U.S. Dist. LEXIS 21004, at *10-11 (D. Utah, Mar. 8, 2010), citing *In re Providence Journal*, 293 F.3d 1, 16 (1st Cir. 2002).

The right to access must also be balanced against the defendant's right to an impartial jury. *Dimora*, 862 F. Supp. 2d at 707 (access to exhibits from highly covered trial denied because of "serious danger that widespread release … would serve to taint the jury pool for [a retrial].") Of course, "qualified jurors need not be totally ignorant of the facts and issues involved." *Gall v. Parker*, 231 F.3d 265, 308 (6th Cir. 2000). "[I]t is beyond question that … even some preexisting opinion as to the merits, does not in and of itself raise a presumption of jury taint." *DeLisle v. Rivers*, 161 F.3d 370, 382 (6th Cir 1998). Thus, a defendant may suffer little prejudice from the pre-trial publication of evidence that will almost certainly be admitted at trial. See *United States v. Graham*, 257 F.3d 143, 155 (2d Cir. 2001) (affirming order to disclose pretrial tapes played at a detention hearing that were not inflammatory and there was no indication a defendant intended to move to suppress them.)

This court must decide whether the risk of creating a fixed impression of guilt outweighs any benefit to the public that would come from releasing the materials in question. *See Belo Broadcasting Corp. v. Clark,* 654 F.2d 423, 425 (5th Cir. 1981) (non-publication approved where court would be "severely hampered in selecting a fair and impartial jury.") That risk is diluted by the passage of time, and by the size of the jury pool. *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1044, 111 S. Ct. 2720, 2729 (1991) ("Given the size of the community from which any potential jury venire would be drawn and the length of time before trial, only the most damaging of information could give rise to any likelihood of prejudice.") Because Croft's trial is not until October, and the jury will be drawn from the thirty-four counties of this District's Southern Division, such prejudice is unlikely here.

The evidence the movants seek in this case was presented in open court, and broadcast to the public over a dedicated audio line. Because there is "no question of a truncated flow of information to the public," this Court has fulfilled its pertinent First Amendment obligations. *See Nixon*, 435 U.S. at 609. While safety protocols necessitated by the COVID-19 pandemic presented some challenges for would-be attendees, the movants have not alleged they were prevented from attending the hearing or listening to the broadcast.

The movants suggest there is no rational basis to distinguish Croft's exhibits from those provided to the media after the co-defendants' hearings. (R. 193-1: BuzzFeed Motion for Access, PageID.1021-22). The fact that Croft has different counsel than his co-defendants is not by itself a distinguishing factor – what counts is that Croft's counsel is *objecting* to the release, whereas his co-defendants did not. BuzzFeed also asserts the exhibits sought are "not so different from the evidence released after the codefendants' preliminary hearing and detention hearings that there is a greater risk of prejudice to Mr. Croft than to his codefendants." (*Id.*, PageID.1022.) This is arguably accurate with regard to exhibits 1, 2, 6, 8 and 9. In the other exhibits, however, Croft expounds in an excited tone about his intent to commit acts of terrorism, and claims God has granted him permission to violate His commandments. In one particular passage, Croft explicitly states his intent to kidnap Governor Whitmer – the primary offense with which he is charged.

These recordings are arguably more inflammatory in tone than the exhibits introduced at the co-defendants' hearings, and they also speak to ultimate issues. They are admissions of a party opponent, however, and as such almost certain to be admitted at trial. *See* Fed. R. Crim. P. 801(d)(2). One can imagine scenarios where evidence properly adduced at a detention hearing might be irrelevant or *unfairly* prejudicial at trial; for instance, evidence of unrelated prior acts

demonstrating danger to the community. Croft's admissions, on the other hand, are relevant and admissible to prove the charges against him. A prospective juror will not need to put the information completely out of mind in order to serve as a fair and impartial juror.

Finally, BuzzFeed dismisses the government's concern that unauthorized release of the exhibits over Croft's objection could provide grounds for appeal or collateral attack. (R. 193-1: BuzzFeed Motion for Access, PageID.1022). First, BuzzFeed asserts that if Croft pleads guilty, his plea agreement will contain an appellate waiver like co-defendant Ty Garbin's. (*Id*.) As this Court is well aware, Ty Garbin has a plea agreement with an appellate waiver because he is a cooperating witness. The government has not offered Croft a plea agreement, and he has no reason to waive his appellate rights. In the alternative, BuzzFeed makes the conclusory statement that "If the case goes to trial and Mr. Croft is convicted, there is little risk of reversal over the disclosure of the exhibits." (*Id*.) Whatever the actual risk of reversal might be, BuzzFeed's assurance will shield neither the government nor the Court from pre- or post-conviction litigation alleging an unfair trial, and does not relieve the parties nor this Court from the burden of balancing Croft's right to an impartial petit jury.

## CONCLUSION

The government does not oppose production of the exhibits in question, if the Court concludes the benefit to the public outweighs other concerns, including the empanelment of a fair jury.

Respectfully submitted,

ANDREW BYERLY BIRGE
United States Attorney

 /s/ Nils R. Kessler
NILS R. KESSLER
Assistant United States Attorney
P.O. Box 208
Grand Rapids, MI 49501-0208
(616) 456-2404
