UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

**UNITED STATES OF AMERICA**
            Plaintiff,

v.

**BARRY CROFT,**
            Defendant.

Case No. 1:20-cr-00183-RJJ

Hon. Robert J. Jonker
Chief United States District Judge

Hon. Sally J. Berens
United States Magistrate Judge

---

### RESPONSE TO BUZZFEED'S[1] MOTION TO COMPEL ACCESS

For the following reasons, Barry Croft through his counsel, Joshua Blanchard, opposes the relief sought by BuzzFeed and the Detroit News.

### STATEMENT OF FACTS

Mr. Croft and five co-defendants were indicted on allegations relating to an alleged plot to kidnap Governor Whitmer. Superseding Indictment, ECF No. 172, PageID.961-976. The discovery produced to date discloses the involvement of at least six paid informants, two undercover agents, and scores of FBI agents. These paid informants and agents produced more than 1,000 hours of audio recordings and over 100,000 pages of documentary discovery.

---

[1] For simplicity and because the Detroit News / Scripps Media, Inc. merely joined in BuzzFeed's motion, counsel refers to the movants jointly as "BuzzFeed"

In December 2020, the Court conducted Mr. Croft's detention hearing in a public courtroom and additionally made the proceedings available for listening via a live dial-in telephone number which broadcast the court proceedings. At the detention hearing, the government introduced less than 5 minutes of audio out of the 1,000+ hours they possessed. The Court entered a protective order that prohibits counsel from releasing excerpts of the audio which could contextualize the admitted exhibits. Protective Order, ECF No. 176, PageID.987-988.

Five months after the detention hearing which they didn't attend and four months before trial[2], BuzzFeed is seeking copies of the detention hearing exhibits to publish them. The Government has stated that they intend to admit the detention hearing exhibits against Mr. Croft at trial. Gov't Response, ECF No. 204, PageID.1092.

## LAW AND ARGUMENT

I. **BUZZFEED'S RIGHTS WERE SUFFICIENTLY PROTECTED WHEN THE COURT HELD AN OPEN HEARING WHICH BUZZFEED DECIDED NOT TO ATTEND.**

BuzzFeed reporters could have attended or listened by telephone to the January 13, 2021 detention hearing. If they had covered the hearing, they could have reported on everything that happened at the hearing including the content of the audio excerpts that were played. They do not allege that they even attempted to

---

[2] BuzzFeed wrongly asserts that trial is more than a year away. *See* Mot. Compel, ECF No. 193-1, PageID.1021 (" As to the timing of the request, a trial in this case   is most assuredly more than year away . . . ."). To the contrary, it is clear that trial starts on October 12, 2021 at 8:30am. EOJ Order, ECF No. 161, PageID.862.

2

attend the hearing in person or via telephone, but they now ask the Court to compel production of the audio and video recordings played at the hearing.

BuzzFeed's main argument is that it needs copies of the exhibits to police the decision of the Court to detain Mr. Croft. *See* Mot. Compel, ECF No. 193-1, PageID.1020 (claiming that "[w]ithout access to that evidence, the public cannot assess whether the Court properly detained Mr. Croft pending trial."). However, Buzzfeed fails to develop an argument on why having the recorded words in Mr. Croft's own voice is necessary and why being able to listen to and report the words that were played in open court is insufficient for their purpose of policing the Court.

When faced with motions to compel access to records, the duty of the trial court is "to exercise an informed discretion as to release of the tapes, with a sensitive appreciation of the circumstances that led to their production." *United States v. Beckham*, 789 F.2d 401, 409 (6th Cir. 1986), *quoting Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 603, 98 S. Ct. 1306, 1315, 55 L. Ed. 2d 570 (1978).

In *United States v. Beckham,* the Sixth Circuit upheld the district court's decision to deny access to copy video and audio recordings admitted at trial because "[w]hen weighing their common-law right to copy exhibits against the defendants' constitutional right to a fair trial and the court's desire for orderly proceedings, the district court . . . determined that the potential for public benefit was less than the potential harm to the fair and orderly administration of criminal justice." *Beckham*, 789 F.2d at 411.

Noting that there was a "scarcity of authority on the subject" the *Beckham* court adopted the five factors from *Nixon* to be considered by a court in determining whether to permit access under the common law right to records: (1) the court's supervisory powers, (2) the benefit to the public from the incremental gain in knowledge that would result from seeing the tape, (3) the degree of danger to the defendants or persons on the tapes, (4) the possibility of improper motives on the part of the media, such as promoting public scandal or gratifying private spite, and (5) any special circumstances in the particular case. *Id.* at 414.

**a. The Court's supervisory powers over its own documents.**

The first *Beckham* factor is the Court's supervisory authority over its own documents. *Beckham,* 789 F.2d at 414. Trial courts have the power to seal records when the interests of privacy outweigh the public's right to of access. *In re The Knoxville News–Sentinel Co., Inc.,* 723 F.2d 470 (6th Cir.1983) (citing *Brown & Williamson Tobacco Corp., supra,* 710 F.2d at 1179).

Because of the high-profile nature of the proceeding and significant media attention it has received, releasing the exhibits before their admission at trial poses a risk of tainting the jury pool. Accordingly, the Court should exercise its supervisory authority to delay access to the records.

**b. The benefit to the public from the incremental gain in knowledge that would result from access to the materials in question.**

This Court went to greater than usual lengths to ensure that the detention hearing was accessible to the public (both locally and around the world) by keeping the courtroom open to the public and hosting a teleconference which permitted

4

members of the media to listen to the hearing from anywhere. Notice of Hearing, ECF No. 125, PageID.690; Non-document Notice, January 13, 2021.

Because the hearing was open to the public to see and hear the exhibits, the media is, or could have been, in a position to report the exact words and to describe the pictures and videos displayed. The only thing the media is unable to do is reproduce those words in the Mr. Croft's own voice or display videos depicting him.

In *United States v. Dimora*, the district court delayed release of videos depicting the defendant pending trial noting that because "these exhibits are videos increases the probability that they will be widely disseminated and thus taint the jury pool." 862 F. Supp. 2d 697, 711 (N.D. Ohio 2012); see also *United States v. Dimora*, No. 1:10CR387, 2015 WL 6444886, at *2 (N.D. Ohio Oct. 23, 2015) (releasing the same records after the criminal proceedings had concluded).

Because the public already had access to see and hear the evidence, the "incremental gain in knowledge that would result from" having access to Mr. Croft's voice is negligible and the exhibits should not be released until the trial is complete.

**c. The degree of danger to petitioner or other persons mentioned in the materials.**

Mr. Croft has an interest in impaneling a fair and impartial jury. Even as of June 1, 2021, one media outlet is spinning the instant motion practice as "Feds: Whitmer kidnap suspect doesn't want public to hear god gave him ok"[3]. In reality,

---

[3]    Tresa Baldas, *Feds: Whitmer kidnap suspect doesn't want public to hear God gave him OK,* DET. FREE PRESS, Jun. 1, 2021,

Mr. Croft wants the public to hear the evidence in proper context at a trial, but not in some carnival-barker atmosphere where 30-second clips are played out of context and with the spin of an editor who is trying to drive clicks on social media platforms.

This case has received extensive media attention. The alleged victim is one of the most high-profile citizens in the state. Selecting a fair and impartial jury is going to be difficult enough without trial exhibits being published to the potential jury pool in advance of jury selection. There is a risk of danger to Mr. Croft's right to a fair trial by releasing these clips so that they can be circulated worldwide before jury selection begins.

### d. The possibility of improper motives on the part of the media such as promoting public scandal or gratifying private spite.

While there is no record evidence of improper motive on the part of the movants, once released and published, the Court has no control over who uses the audio recordings or how they are used.

### e. Any special circumstances in the case.

This case is arguably the most high-profile case pending in the District and possibly second nationally only to the January 6th Capitol rioters. Selecting a fair and unbiased jury will be a significant challenge. The government recognized the problems in pretrial publicity when it asked undersigned counsel to consent to a protective order limiting disclosure of the discovery items.

---

https://www.freep.com/story/news/local/michigan/2021/06/01/michigan-whitmer-kidnap-suspect-barry-croft-jr/5290464001/

Adding fuel to the fire by allowing BuzzFeed to go beyond reporting the facts presented at the detention hearing and use Mr. Croft's voice and likeness will negatively impact the trial proceedings. Such release will increase the likelihood of needing to sequester the jury during the month-long trial, a task which seems logistically difficult while emerging from a global pandemic.

## CONCLUSION

Because of the high-profile nature of this case, the potential for release of the exhibits to taint the jury pool, and because there is no "incremental gain in knowledge that would result from hearing the tapes themselves" this Court should deny or delay disclosure of the recordings until after a jury has reached a verdict. *Beckham*, 789 F.2d at 409.

**WHEREFORE**, the defendant, Mr. Barry Croft, requests this Court deny movant's request to access the exhibits until the trial in this matter is complete.

Respectfully Submitted,
**BLANCHARD LAW**

Dated: June 3, 2021         /s/ Joshua A. Blanchard
                            Joshua Blanchard
                            Attorney for Defendant
                            309 S. Lafayette St., Ste. 208
                            Greenville, MI 48838
                            (616) 773-2945
                            josh@blanchard.law

## CERTIFICATE OF COMPLIANCE WITH LCrR 47.2(b)(ii)

I certify that the foregoing document contains 1,622 countable words as defined by LCrR 47.2(b)(i) and as calculated by Microsoft Word for Mac version 16.50.

Dated: June 3, 2021                             /s/ Joshua A. Blanchard
                                                Joshua Blanchard