UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

        vs.                          Case No. 1:20-CR-183

                                         Hon. Robert J. Jonker
BARRY GORDON CROFT, JR.,               Chief U.S. District Judge

        Defendant.
_____/

**GOVERNMENT'S RESPONSE IN
OPPOSITION TO DEFENSE MOTION TO SUPPRESS**

FBI Agents obtained a warrant to search Defendant Barry Croft's home. The warrant specifically authorized the seizure of "tactical gear" as well as "clothing" associated with the "Boogaloo Boys" and the "Three Percenters." Even so, Croft now argues that the FBI exceeded the limits of the search warrant by taking a tactical code cipher and a tricorne hat from his home, along with several other items.

This Court should deny Croft's motion. A cipher is a piece of tactical gear, and the tricorne hat is a piece of clothing that Croft himself linked to both the Boogaloo Boys and Three Percenter movements. Hence, the warrant authorized the seizure of both items. As for the admissibility of the remaining items on Croft's list of evidence that he claims should be suppressed, the issue is moot because the government does not intend to introduce any other items on Croft's list at trial.

I.     **BACKGROUND**

   *A. Croft Linked his Tricorne Hat to the III % and Boogaloo Movements.*

Before his arrest, Barry Croft had a Facebook account that he used actively. On May 14, 2020 he made a post referencing the Michigan III % movement.[1] Croft wished the movement well:

> **Posted** 2020-05-14 13:27:09 UTC
> **Status** I had the government in mind when I picked out my clothing for today, I'm pulling for Michigan!!!%  Gentlemen, we understand if you have to send some criminal enforcers directly to hell!!!%

What clothing was he talking about? He added a picture to show what he meant. In it, he was wearing (1) a tricorne hat, (2) glasses featuring a skull & crossbones on the nose bridge, and (3) a shirt depicting four fictional serial killers from movies like *Friday the 13th* and *The Nightmare on Elm Street*:



Croft also linked his tricorne hat to the Boogaloo movement. Below are pictures of him taken during a group event in Cambria, Wisconsin in July of 2020. Croft is posing with the

---

[1] As social media companies worked to remove prohibited content from their platforms during 2020, members of these groups would sometimes deliberately alter or misspell their group names in order to avoid detection by word-based security algorithms. As a result, members of the "Three Percent" movement referenced themselves as "III%," "3%," and "!!!%," among other synonyms.

Delaware Boogaloo flag while wearing his tricorne hat. Note also that the flag itself features a

person wearing a feathered tricorne hat:

 

B.  *FBI Agents Found a Cipher and a Tricorne Hat in Croft's Home.*

On October 6, 2020, a federal magistrate in Delaware issued a warrant for the search of

Croft's home. The warrant authorized the seizure of all "items and records, in whatever form they

exist, that constitute evidence, fruits, contraband, and instrumentalities of violations of 18 U.S.C.

§ 1201(c)." After this, the warrant listed several subcategories of evidence that fell within the

broader category of "evidence, fruits, contraband, and instrumentalities of violations of 18 U.S.C.

§ 1201(c)." These subcategories included:

> 7.  Tactical gear, including but not limited to: body armor, fatigues, trail cameras, and
>     handheld radios;

and

9.  Any and all materials such as literature, paraphernalia, clothing, or membership in organizations, such as, but not limited to, the "Bugaloo Boys" and the "Three Percenters";

FBI Agents executed the search warrant on October 8, 2020. Inside, they found and seized many items of evidence. One item that agents took was a one-page document that listed all the letters of the English alphabet, the numbers 0 through 9, and the days of the week in a table alongside other symbols.  It looked like this:



Agents seized the document and listed it on the warrant return as a "cipher."

Agents also found a tricorne hat and seized it.

There were other items that agents collected. The warrant authorized seizure of :

1. Firearms, firearm equipment, and ammunition of any kind;

2. Any edged weapons, including by not limited to: tomahawks, knives, and swords;

and

5. Components used in the construction of an Improvised Explosive Device, including but not limited to; silicone bottles, black powder, smokeless powder, propane tanks, hobby fuse, adhesives, duct tape, and BBs or other hardened material;

6. Any books, literature or other materials related to instructions about how to build explosive devices;

Consistent with these subcategories and the others mentioned above, agents collected dozens of other items. (See ECF No. 246-2, Defense Exhibit B, PageID.1342.) Agents also collected evidence that linked Croft to the home and areas being searched, such as checks made out to him and correspondence addressed to him. In addition, agents seized several items of value, such as $343 in cash and a bar of silver.

> C. *FBI Agents Found Other Ciphers While Searching the Property of Croft's Codefendants.*

On the same day that Croft's home was searched, FBI Agents in Michigan found two other ciphers while searching the property of Croft's codefendants. Kaleb Franks had an armor plate carrier in his house, and there were two pieces of paper folded up in the pockets of the carrier.[2] One page looked nearly identical to the cipher from Croft's house:

---

[2] A plate carrier is a tactical vest designed to hold armor plating over the body of the person who wears it. Plate carriers often contain straps that allow wearers to attach pouches, magazine holsters, and other tactical gear to the outside of the plate carrier.



The agents who searched Ty Garbin's property also found a cipher. It was stored in Garbin's truck along with guns, ammunition, silencers, and a cross bow. (Gov. Exhibit 1 – Evidence from Search of Ford F-150 Truck.)

*D. Background on Ciphers.*

A cipher is "any method of transforming a message to conceal its meaning." *History of Cryptography*, Encyclopedia Britannica (August 26, 2021 1:05 PM),

https://www.britannica.com/topic/cipher. Ciphers have been used by military leaders since at least the time of the ancient Spartans, "who as early as 400 BC employed a cipher device called the scytale for secret communication between military commanders." *Id.* This tradition of cipher use for tactical purposes continued through the American Civil War when cipher systems "prevailed…for military tactical communications because of the difficulty of protecting codebooks from capture or compromise in the field." *Id.* One-hundred years later, during the American war

in Vietnam, both sides dedicated significant effort to protecting their communications using cipher cryptography. *See* Phan Duong Hieu & Neal Kobliz, *Cryptography During the French and American Wars in Vietnam*, 41 *Cryptologia* 491 (2017). Ciphers remain important in modern military tactics. The United States Marine Corps specifically includes "cipher devices" in its list of security components to be employed by tactical commanders in the field. *Commander's Tactical Handbook, Marine Corps Reference Publication 3-30.7, App'x D. – Communication and Info. Systems* D-12 (April 4, 2018 Ed.).[3]

## II.    APPLICABLE LAW

"When the search at issue occurred pursuant to a warrant, the defendant has the burden of establishing a prima facie case indicating that the search was illegal." *United States v. Nantz*, 466 F. Supp.3d 733, 737 (E.D. Ky. 2020) (citing *United States v. Murrie*, 534 F.2d 695, 697-98 (6th Cir. 1976)). Courts routinely deny as moot motions to suppress evidence that the government does not intend to introduce at trial. *See United States v. Sims*, 603 F. App'x 479, 483 (6th Cir. 2015) (holding appeal of suppression ruling moot where government did not introduce defendant's statements during trial); *see also United States v. Jones*, 2018 WL 3212073 (E.D. Ky. April 13, 2018) (denying as moot motion to suppress records that government did not intend to use at trial).

"Absent flagrant disregard for the limitations of a search warrant, the items covered by the warrant will be admissible." *United States v. Henson*, 848 F.2d 1374, 1383 (6th Cir. 1988). Regarding limitations, a warrant must describe with particularity the items to be seized during a search. *United States v. Evers*, 669 F.3d 645, 651 (6th Cir. 2012). However, "the degree of specificity required is flexible and will vary depending on the crime involved and the types of

---

[3] Full text of this publication is available online: https://www.marines.mil/Portals/1/Publications/MCRP%203-30.7%20GN.pdf.

items sought." *United States v. Greene*, 250 F.3d 471 (6th Cir. 2001) (quoting *United States v. Ables*, 167 F.3d 1021, 1033 (6th Cir. 1999)). "The prohibition of general searches is not to be confused with a demand for precise ex ante knowledge of the location and content of evidence . . . ." *United States v. Richards*, 659 F.3d 527, 541 (6th Cir. 2011) (quoting *United States v. Meek*, 366 F.3d 705, 716 (9th Cir. 2004). Moreover, "even evidence not described in a search warrant may be seized if it is reasonably related to the offense which formed the basis for the search warrant." *United States v. Wright*, 343 F.3d 849, 863 (6th Cir. 2003) (internal quotations omitted). Thus, "a search does not become invalid merely because some items not covered by a warrant are seized." *Marcilis v. Twp. of Redford*, 693 F.3d 589, 602 (6th Cir. 2012) (citing *United States v. Lambert*, 771 F.2d 83, 93 (6th Cir. 1985)).

   III.   ANALYSIS

Both the tricorne hat and the cipher were within the scope of the warrant to search Croft's house.

Regarding the hat, the warrant explicitly authorized the seizure of "clothing" linked to the "Three Percenters" and the "Boogaloo Boys." A hat is plainly a piece of clothing, and this specific hat is one that Croft himself linked to both of the movements described. He donned the hat in a selfie that he posted on the internet while explaining that he had the Michigan III% movement in mind when he chose to wear it.  The link to the Boogaloo Boys movement is likewise indisputable – even if Croft had not been wearing his tricorne hat while posing with the Delaware Boogaloo flag, the flag itself features a person wearing a feathered tricorne hat of similar design.

The cipher was also within the warrant's scope. Ciphers have been an important communications security tool for more than 2,000 years and are still relevant to modern military

operations. Given this lengthy history, it was reasonable for the searching agents to determine that the cipher qualified as a piece of "tactical gear" that the warrant permitted them to seize.

In addition, an established textual canon affirms the agents' interpretation. The canon *noscitur a sociis*, meaning "known by its associates," says that the meaning of a disputed term can be illuminated by the meaning of the words surrounding it. *Yates v. United States*, 574 U.S. 528, 543 (2015) ("a word is known by the company it keeps"). Here, the other words in the paragraph authorizing the seizure of tactical gear show that the warrant defined "tactical gear" to include a broad range of items that had military value, including communications tools ("body armor, fatigues, trail cameras, and *handheld radios*"). A cipher is another communications tool designed for a tactical purpose, so the cipher that agents found within Croft's home was within the meaning of "tactical gear" as used in the warrant.[4]

Besides this, the physical "associates" of the ciphers seized in this case show that the defendants themselves considered a cipher to be a piece of tactical gear. Agents found the ciphers stored alongside and inside weapons, ammunition, knives and body armor. Surely the agents were not unreasonable for making the same assessment as the defendants, namely, that a cipher was a tactical device that belonged with other tactical equipment.

Because these items were within the scope of the warrant, the government did not violate Croft's Fourth Amendment rights by taking them. While Croft does challenge other evidence as

---

[4] The related canon, *ejusdem generis*, reinforces this interpretation of the warrant. This canon holds that where "general words follow specific words in a statutory enumeration, the general words are [usually] construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *Yates*, 574 U.S. at 545, quoting *Washington State Dept. of Social and Health Servs. v. Guardianship Estate of Keffeler,* 537 U.S. 371, 384 (2003). In this case, the warrant paragraph begins with a general term, "tactical gear," rather than ending with one. But the specific examples of tactical gear that the warrant lists are varied enough to show that "tactical gear" includes communications tools like ciphers.

outside the scope of the warrant, the government will not use any of the other challenged evidence

at trial, so Croft's challenge is moot.[5]

### IV. CONCLUSION

For the above reasons, the government asks this Court to deny Croft's motion to suppress

evidence seized during the search of his home.

Respectfully submitted,

ANDREW BYERLY BIRGE
United States Attorney

Dated: August 26, 2021        _/s/ Austin J. Hakes_
                                           AUSTIN J. HAKES
                                           NILS R. KESSLER
                                           Assistant United States Attorneys
                                           P.O. Box 208
                                           Grand Rapids, MI 49501-0208
                                           (616) 456-2404

---

[5] In addition to the cipher and the hat, Croft alleges that the following items were outside the scope of the warrant: children's school photos, boots, a license plate, United States currency, a certificate of service for legal documents, copies of correspondence between Croft and his Delaware attorney, two checks, a Mastercard, a Visa debit card, Croft's social security card, a 1kg silver bar, batteries, and a plastic storage container full of documents. (ECF No. 246, Mot. to Suppress, PageID.1323.) The government does not intend to introduce these challenged items at trial. However, there is additional, unchallenged evidence from the search of the home that the government does intend to introduce at trial.