UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

**UNITED STATES OF AMERICA**
                Plaintiff,

v.

**BARRY GORDON CROFT, JR.,**
                Defendant.

Case No. 1:20-cr-00183-RJJ

Hon. Robert J. Jonker
Chief United States District Judge

---

## MR. CROFT'S TRIAL BRIEF

Following the Final Pretrial Conference, the Court invited the parties to supply briefing regarding the government request to permit witnesses to testify under false names as well as "any evidentiary, logistical, or procedural issues". ECF No. 486, PageID.3652.

### I. GOVERNMENT'S REQUEST TO ALLOW WITNESSES TO TESTIFY UNDER FALSE NAMES

This case involves a staggering use of confidential human sources and undercover agents. Known to counsel are as many as a dozen government agents who were involved in the case. Counsel is aware of two specific undercover FBI agents: "Red" and "Mark" who had contact with the defendants. "Red" posed as a person who would supply explosives. He is not merely a passive player in the investigation – he generated promotional videos showing his purported abilities which were pushed to the charged defendants in an attempt to interest them in

1

purchasing his explosives. When they didn't initially bite, he offered that "IOUs" were an acceptable form of payment.



*Figure 1 - Screen capture from promotional "sales video" demonstrating ability to develop and employ explosives which was produced by undercover FBI agent "Red" and distributed to the defendants.*

The government has not disclosed the true names of these agents to the defendants. The government now proposes that "Red" and "Mark" be permitted to testify under false names. Trial Brief, ECF No. 469, PageID.3510.

### A. ALLOWING FBI AGENTS TO TESTIFY USING FALSE NAMES VIOLATES MR. CROFT'S CONSTITUTIONAL RIGHTS.

The Constitution guarantees the right to a fair trial, and the presumption of innocence is central to this right. *Holbrook v. Flynn*, 475 U.S. 560, 567; 106 S. Ct. 1340; 89 L. Ed. 2d 525 (1986). "[O]ne accused of a crime is entitled to have his guilt or innocence determined solely on the basis of the evidence introduced at trial, and

2

not on grounds of official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial." *Taylor v. Kentucky*, 436 U.S. 478, 485; 98 S. Ct. 1930; 56 L. Ed. 2d 468 (1978). Allowing government employees to use pseudonyms is inherently prejudicial and may improperly influence the jury. Among other inferences a jury may draw from the use of false names is that the defendants or their associates are so dangerous as to cause professional FBI agents to be afraid of the defendants.

A primary interest secured by the Confrontation Clause "is the right of cross-examination." *Douglas v. Alabama*, 380 U.S. 415, 418; 85 S. Ct. 1074; 13 L. Ed. 2d 934 (1965). The United States Supreme Court has emphasized that "[t]here are few subjects, perhaps, upon which this Court and other courts have been more nearly unanimous than in their expressions of belief that the right of confrontation and cross examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal." *Pointer v. Texas*, 380 U.S. 400, 405; 85 S. Ct. 1065; 13 L. Ed. 2d 923 (1965). "'The opponent demands confrontation, not for the idle purpose of gazing upon the witness, or of being gazed upon by him, but for the purpose of cross examination, which cannot be had except by the direct and personal putting of questions and obtaining immediate answers.'" *Davis v. Alaska*, 415 U.S. 308, 316; 94 S. Ct. 1105; 39 L. Ed. 2d 347 (1974) (quoting 5 J. Wigmore, Evidence § 1395, p. 123 (3d ed. 1940)). There is a violation of the Confrontation Clause when a defendant is prohibited from engaging in "otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the

witness," that would expose the jurors to facts from which they could appropriately draw inferences relating to the reliability of the witness. *Delaware v. Van Arsdall*, 475 U.S. 673, 680; 106 S. Ct. 1431; 89 L. Ed. 2d 674 (1986).

The United States Supreme Court has made clear that identifying information provides the most fundamental basis for effective cross-examination:

> In the present case there was not, to be sure, a complete denial of all right of cross-examination. But the petitioner was denied the right to ask the principal prosecution witness either his name or where he lived, although the witness admitted that the name he had first given was false. Yet when the credibility of a witness is in issue, the very starting point in "exposing falsehood and bringing out the truth" through cross-examination must necessarily be to ask the witness who he is and where he lives. The witness' name and address open countless avenues of in-court examination and out-of-court investigation. To forbid this most rudimentary inquiry at the threshold is effectively to emasculate the right of cross-examination itself. [Smith v. Illinois, 390 U.S. 129, 131; 88 S. Ct. 748; 19 L. Ed. 2d 956 (1968).]

Testifying under a false name would not allow for effective cross examination and would deny Mr. Croft his right to confrontation. Despite the government alleging that it will provide counsel with any material that may go to credibility, this is not enough. Gov't Trial Brief, ECF No. 469, PageID.3510. Counsel has a duty to independently investigate, and counsel's investigation may return different results than the information "required by Rule 16, Brady, Giglio, and the Jencks Act" which the government has offered to provide. *Id.*

At bottom, the Defense should not be restricted to discovering information which the Government has determined, in its sole judgment, is required to be

4

disclosed to the defense. To the contrary, the defense is entitled to conduct its own investigation and uncover any useful evidence without regard to whether it rises to the level of *Brady* or *Giglio.*

This necessary information is critical for in-court examination and out-of-court investigation. Without the real names of the witnesses, counsel cannot research, for instance, prior testimony from these witnesses that is fundamental in preparing for cross-examination. The credibility and reliability of these government employees is definitely at issue when these employees and other government agents sought out Mr. Croft, plied him with drugs and alcohol, organized and funded the events, and manufactured evidence which they claim indicates Mr. Croft committed the crime.

This issue is certainly of constitutional significance when Mr. Croft has the constitutional right to a fair trial, including confronting witnesses, and knowing the government employees' identifying information is fundamental to this.

"Red" and "Mark" interacted with Mr. Croft and others under false names. Using false names in undercover investigations is ordinary practice. Without any explanation, the government asserts that disclosing the true names of the agents will somehow "compromis[e] those investigations or endanger[]their safety". Gov't Trial Brief, ECF No. 469, PageID.3510.

Almost certainly, the agents are not using their true names in the other investigations and so disclosing their true names will not impact the other investigations. Photography is already prohibited in the courtroom, so the

5

government need not worry that the undercover agents' likenesses will be published. *See* LGenR 4.1(c)(i). To the extent that the government has concerns about the agents' likenesses being captured entering or exiting the building, it can easily mitigate that concern by using a private entrance or wearing a disguise while entering the building.

In support of its request, the government cites to *United States v. Zelaya*, 336 F. App'x 355 (4th Cir. 2009) where the defendants were charged with, among other things, conspiracy to commit murder in aid of racketeering. *Id.* at 356. In contrast to the instant defendants, the defendants in *Zelaya,* were members of MS-13 – "a national and international criminal organization, consisting of approximately 10,000 members, that regularly conducts gang activities in at least 25 states and the District of Columbia, as well as Mexico, Honduras, and El Salvador." *Id.* Members of MS-13 frequently engage in criminal activity, including murders, assaults, and kidnappings, as committing acts of violence is required to maintain membership. *Id.*

The Court in *Zelaya* allowed two individuals from El Salvador to testify under pseudonyms. *Id.* at 357. Before permitting the pseudonymous testimony, the District Court conducted sealed *ex parte* and *in camera* hearings where it examined the witnesses and concluded "that the threat to these witnesses and their families, should their true identities be provided, was actual and not a result of conjecture." *Id.* at 358 (cleaned up).

6

Further, in *Zelaya,* the government had provided pretrial notice regarding the nature of the pseudonymous testimony and a transcript of their previous sworn testimony on the same subject matter presented in the case. *Id.*

Here, the government has not undertaken to make a showing that there is an actual risk of harm to the agents or their families should they testify in their true name. The government has not offered prior testimony of the agents. The government did not make its request for pseudonymous testimony until the eve of trial.

All the government offers to support its request is that some people to whom Mr. Croft is loosely connected said on a YouTube video that the host (not Mr. Croft) had "effectively ruined" Agent Chambers and Agent Impola by exposing them. Gov't Trial Brief, ECF No. 469, PageID.3511. In context, it seems that this YouTube personality was taking credit for the public reporting relating to Mr. Chambers' outside business interests in Exeintel and the perjury complaint lodged against Mr. Impola. Of note, the government doesn't point to any independent disclosures of confidential information which has put Mr. Impola nor Mr. Chambers at risk, nor do they tie this claim to Mr. Croft beyond pure conjecture.

The other case cited by the government is a district court opinion which merely notes that a witness was permitted to testify under a pseudonym at a suppression hearing. *United States v. Abu Ali*, 395 F. Supp. 2d 338, 344 (E.D. Va. 2005). This case is inapposite because "the right to confrontation is a *trial* right" and would not trigger a constitutional concern at a suppression hearing.

7

*Pennsylvania v. Ritchie*, 480 U.S. 39, 52, 107 S. Ct. 989, 999, 94 L. Ed. 2d 40 (1987) (emphasis in original).

Permitting the agents to testify under false names erodes the presumption of innocence. Such a measure clearly communicates to the jury that the defendants are so dangerous that even experienced FBI agents have a judicially recognized and justified reason to fear them. This is particularly concerning in a case where the primary allegation is that the defendants targeted a government employee.

Counsel is also constitutionally required to conduct a reasonable investigation. *See*, e.g., *Bryant v. Scott*, 28 F.3d 1411, 1419 (5th Cir. 1994). Counsel cannot do so if witnesses are allowed to testify under false names because the pseudonym renders counsel unable to conduct even the most basic investigation.

Because the government has failed to make a sufficient showing that requiring the agents to testify in their true names would pose an actual and serious risk of harm to the agents and because the Sixth Amendment secures the right to effective cross examination aimed at "exposing falsehood and bringing out the truth" which "must necessarily [start by] ask[ing] the witness who he is and where he lives", the Court should deny the request to testify under a pseudonym. *Smith v. Illinois*, 390 U.S. 129, 131; 88 S. Ct. 748; 19 L. Ed. 2d 956 (1968).

**B. POTENTIAL BRUTON ISSUE**

The Court ordered the parties to mark exhibits before the final pretrial. Order Setting Trial, ECF No. 136, PageID.720. In denying Mr. Croft's motion to compel the government to produce an early identification of exhibits and witnesses,

the Court noted the government's "obligation to comply with this Court's Order requiring disclosure and marking of trial exhibits by the time of the Final Pretrial Conference." Order, ECF No. 310 PageID.1844. Through its exhibit coordinator, the defendants produced their exhibits on Thursday, February 17, 2022. The government failed to produce their exhibits before the final pretrial conference, so this issue was unable to be raised at the conference.

In reviewing the government's exhibits, counsel has discovered that the government has disclosed the entirety of the post-arrest interrogations of Mr. Fox, Mr. Harris, and Mr. Caserta as trial exhibits. In June 2021, undersigned counsel reached out to Mr. Kessler seeking an identification of which portions of the post-arrest interrogations of the defendants the government intended to use so that the parties could iron out any *Bruton* issues. At the time, the government stated that "Not yet, but I'm glad you brought it up – I agree it'd be better to iron out Bruton issues early. We'll get started looking through the statements, and seeing what can be redacted to avoid impermissibly implicating your client. Then we can touch base and see if we can agree on the number & scope of the redactions."

After receiving the full interrogations in the exhibit exchange, counsel reached out to Mr. Kessler again. On February 21, 2022, Mr. Kessler confirmed that he does not intend to introduce the entirety of the interrogations but has declined to identify which parts he intends to introduce and has declined to state when he will identify which parts he intends to introduce.

9

The point of requiring an exchange of exhibits is to facilitate an orderly trial. Without knowing which portions of the audio the government intends to introduce, counsel expects there will be a protracted hearsay and *Bruton* dispute mid-trial while the jury is waiting.

The introduction of the post-arrest interrogations of Mr. Croft's co-defendants at trial would deprive Mr. Croft of his constitutional right under the Confrontation Clause. See, *Crawford v. Washington*, 541 U.S. 36 (2004). In *Crawford*, the Supreme Court held that the Confrontation Clause bars the admission of out-of-court statements if the defendant did not have an opportunity to cross-examine the witness. *Crawford*, 541 U.S. at 53-54. The Sixth Circuit later clarified *Crawford* and held that "[i]f a statement is not testimonial, Confrontation Clause principles do not apply." *United States v. Suggs*, 531 F. App'x 609, 617 (6th Cir. 2013). See, also *United States v. Cromer*, 389 F.3d 662, 675 (6th Cir. 2004) (testimonial means that a "reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime.").

There is hardly any class of statement more commonly understood to be testimonial than a police-station interrogation of a co-defendant following an arrest.

In *Bruton v. United States*, 391 U.S. 123 (1968), a witness testified that Bruton's codefendant, Evans, had confessed that he and Bruton had committed a crime. *Id.* at 124. The Supreme Court held that the introduction of codefendant Evans' confession violated Bruton's Sixth Amendment right to cross-examine witnesses. *Id.* at 126. Moreover, the admission of a non-testifying codefendant's

10

confession implicating another defendant at a joint trial was a violation of that defendant's rights under the Confrontation Clause. *Id*. at 128. Codefendant Evans' confession in Bruton had been found not to be admissible against Evans or Bruton in a joint trial. *Id*. at 124 n.1. The Court remarked that Evans' confession which implicated Bruton was "devasting to the defendant" in a joint trial. *Id*. at 136.

In *Richardson v. Marsh*, 481 U.S. 200 (1987), the defendant and codefendant were tried together, and the codefendant's confession was redacted to omit any reference to the nonconfessing defendant. *Richardson* modified *Bruton* and held that the confrontation clause was not violated by the admission of a non-testifying codefendant's confession if:

• a limiting instruction is given to the jury, and

• the redaction eliminated any reference to the existence of the nonconfessing codefendant. *Id*. at 208.

In *Gray v. Maryland*, 523 U.S. 185 (1998), the Court addressed the question of whether the confession of one defendant – whether or not it has been redacted to remove reference to the nonconfessing defendant – can be used at a joint trial involving both defendants. In *Bruton*, supra the Court simply held that a confession should not be used against his nonconfessing codefendant at a joint trial. However, *Richardson*, supra later created an exception and held that a defendant's confession could be used so as long as there is no reference to the other nonconfessing defendant. *Gray*, supra muddied the waters by holding that if you partially redact a defendant's confession by removing the name or any reference to the other

11

nonconfessing defendant, that was just as damaging to the defendant as not redacting it at all because a reasonable juror could conclude that the redacted reference was the other defendant on trial The redacted confession in *Gray* (i.e., deleting the defendant's name or adding a blank space) continued to refer directly to the existence of the nonconfessing defendant. *Gray*, supra p. 192.

The Sixth Circuit has interpreted these type of cases as "the introduction of a declarant- codefendant's self-incriminating, extra-judicial statement, in a joint trial, where the defendant's name is redacted and a neutral term is substituted." *United States v. Vasilakos*, 508 F.3d 401, 408 (6th Cir. 2007). *Vasilakos*, reflects that such permissible substitutions for a codefendant's name includes phrases like "the person" or "another person." *Id*. This type of redaction does not raise Confrontation Clause concerns so long as the redacted statement does not "ineluctably implicate" the non-declarant co-defendant. Id.

The Sixth Circuit has remarked that the use of neutral pronouns and the passive voice eliminates the risk that the jury will believe that the confessing codefendant was referring to the nonconfessing defendant. See *Vasilakos*, 508 F.3d at 408 ("Because the government was prosecuting multiple defendants for participation in an alleged conspiracy . . ., the declarant- codefendants' statements did not ineluctably implicate [them]."); See also *United States v. Mendez*, 303 F. App'x 323, 327 (6th Cir. 2008) (no *Bruton* issue was found where the codefendant's statement referenced "the five people" involved in the crime, and there were five defendants on trial).

12

Because the government has refused to identify which excerpts it intends to introduce at trial from the over 8 hours of interrogation they have disclosed despite stating that it would not introduce the entire 8 hours, it is impossible to efficiently address the potential *Bruton* issue.

By way of example only, during his interrogation by former FBI Agent Richard Trask, Mr. Fox responded in the apparent affirmative to Trask's statement "OK, and I'm familiar with Barry Croft as well. So, and I know. Th- this is where I say we know what's goin' on, OK? So, I know Barry Croft kind of had this plan where he suggested that, um, you know we kind of take over governments, or we, you know, kidnap some uh, Governors and whatnot. OK? So, I know he had this plan, I know it was discussed there. I know you were there, alright? Fair enough?" Mr. Fox replied "mmhmm".

To the extent that this is Mr. Trask's statement, it is hearsay. To the extent that Mr. Fox adopted the statement when he said, "mmhmm", the introduction against Mr. Croft violates his right to confrontation.

The Court should compel the government to comply with its order to mark and exchange exhibits in advance of trial so that the parties can engage in a meaningful discussion of the appropriate *Bruton* remedy and facilitate an orderly and efficient trial.

### C. BRADY VIOLATION RELATING TO CHS FILES AND CHS NON-DISCLOSURE AGREEMENT.

13

The government has failed to produce the CHS files. In June 2021, counsel requested a broad class of information relating to the confidential human sources. The government has largely not produced responsive documents.

In reviewing the many terabytes of discovery produced, it was discovered that during a December 2020 interrogation of CHS Steve, FBI agents had CHS Steve sign a non-disclosure agreement which, in the agent's words, "basically says, don't tell anybody, right?" The agent further explained "if we really reveal information that is for national security purposes, undercovers, prosecution strategy, like you're locked in. Don't tell people."

In context, it is believed that the FBI agents had CHS Steve sign an agreement not to discuss his involvement or knowledge with the FBI with any defense attorneys. In the criminal justice system, fact witnesses do not belong to one side or the other. Nonetheless, true to the FBI's command, CHS Steve has not spoken to the defense attorneys. This is particularly concerning because at the time the FBI had Mr. Robeson agree to remain quiet, they knew he had committed federal and state crimes during his cooperation in this case[1]. The FBI had to know that the information they were asking CHS Steve to conceal was material to the defense. They knew he had broken their rules during his cooperation and had broken the law while cooperating. The United States Attorney has characterized

---

[1] Contemporaneous with the signing of the non-disclosure agreement during the interrogation, the FBI was executing a search warrant at CHS Steve's home which led to the charges for which he was prosecuted in *United States v Robeson,* 21-cr-24 (W.D. Wis.).

14

Mr. Robeson as a "double agent" who was "often working against the interests of the government." ECF No. 396, PageID.2729.

Despite requests by the defense, the government has failed to disclose the non-disclosure agreement, the CHS admonitions, and the payment records to CHS Steve or the other CHSs involved in this case.

This Court has discretion to order disclosure of *Brady* material prior to trial in order to avoid a constitutional violation. *See United States v. Hart,* 760 F.Supp. 653, 655 (E.D.Mich.1991) ("Although ... pretrial disclosure of *Brady* material is not required, it is clear that a district court has general authority to order pretrial disclosure of *Brady* material to ensure the effective administration of the criminal justice system.") (internal quotation marks omitted); *United States v. Jones,* No. 10–20568, 2011 WL 551145 at *2 (E.D.Mich. Feb. 9, 2011).

The Court should order the government to supply the complete FBI CHS files relating to each CHS involved in this investigation, including any agreements to conceal evidence from the defense, and should instruct the jury as follows:

> In this case, the government failed to turn over promptly, as required by law, a piece of evidence favorable to the defense, namely evidence that FBI agents entered into an agreement with CHS Steve to conceal favorable evidence from the defense, of which the defense learned only on [date of disclosure], when the Court ordered the Government to produce the non-disclosure agreement. Although this delay does not necessarily bear on the guilt or innocence of the defendant, you may, if you think it appropriate in light of all the evidence, take into account the possible harm to the defense caused by this delay when evaluating whether the government has proven the defendant's guilt beyond a reasonable doubt.

*See* Elizabeth Napier Dewar, A FAIR TRIAL REMEDY FOR BRADY VIOLATIONS, 115 Yale L.J. 1450 (2006).

Because the government is in possession of *Brady* material which it has not disclosed and because a pretrial disclosure will avoid a constitutional problem, the Court should order the government to immediately produce all *Brady* material and should instruct the jury as requested above.

                                                       Respectfully Submitted,

Dated: February 22, 2022          /s/ Joshua A. Blanchard
                                                   Joshua Blanchard
                                                   BLANCHARD LAW
                                                   Attorneys for Defendant Croft
                                                   309 S. Lafayette St., Ste. 208
                                                   Greenville, MI 48838
                                                   616-773-2945
                                                   josh@blanchard.law