UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

**UNITED STATES OF AMERICA**
                Plaintiff,        Case No. 1:20-cr-00183-RJJ

                                       Hon. Robert J. Jonker
                                       Chief United States District Judge

v.

**BARRY GORDON CROFT, JR.,**
                Defendant.
_____/

### RESPONSE TO GOVERNMENT BRIEF REGARDING
### FALSE WITNESS NAMES

      The government filed a second brief requesting permission to allow witnesses to testify under false names. *See* Trial Brief, ECF No. 469, PageID.3510-3512; Brief, ECF No. 489, PageID.3769-3779. As pointed out in Mr. Croft's trial brief, the government had not undertaken to show how the agents are at risk by using their real names. It still hasn't made that showing. What it has done is voyeuristically sift through hours of Mr. Croft's jail calls to present an incomplete and misleading picture which warrants correction.

### MISLEADING EXCERPTS

      The government cites, grossly out of context, several of Mr. Croft's jail calls. It writes "[n]otwithstanding the Court's protective order, defendant Croft has ***apparently*** disclosed discovery materials to the media and extremist associates. Those associates offered a cash bounty for the identity of informants, and have

1

publicly called for violent retaliation against the FBI." Brief, ECF No. 489, PageID.3769 (emphasis added). Despite this bold claim, the government does not cite a single piece of "discovery material" [*id.*] or even one "case detail" [ECF No 489, PageID.3771] that Mr. Croft has communicated to the media or associates[1] in violation of the order.

**The "Bounty" Facebook Post**

The Facebook post from some unknown person cited by the government was made on October 8, 2020 – more than two months before Mr. Croft was even transported to this District, long before Mr. Croft had obtained any discovery, before the protective order was entered, and while he was still being held *incommunicado* by the FBI in Delaware. The government can't, in good faith, be arguing that after the government seized all of Mr. Croft's electronics and while he was awaiting his first appearance in the District of Delaware that he somehow was arranging for people on the outside to offer "bounties" and that he was also clairvoyantly disclosing discovery which he wouldn't receive for months to come.

**February 17, 2021 Call**

To support its baseless claim that Mr. Croft has been violating the Court's protective order, the government writes:

> On February 17, 2021, Croft told Associate 1 that he was planning to speak with a reporter from ProPublica. He advised her, "You may want to get in touch with [the reporter], because from what my attorney said, he does good work. The only thing is, he scheduled a visit, which

---

[1] The government also conflates the protective order's prohibition on disseminating "discovery material" [ECF No. 176, PageID.987] with case details.

2

comes through the kiosk, and that gets recorded." He added, "But the thing of it is, is if I don't talk to him directly, he can't use anything against me in the case." [*Id.* at PageID.3772]

However, in truth, during the beginning of that phone call, Mr. Croft explained at length to Associate 1 why he believed particular provisions of the United States Code prohibited delegation of legislative authority to the executive. Mr. Croft then said:

> **There's a guy who made a visit with me that I couldn't hold. My lawyer told me to steer clear of him.** But his name is Adam Thompson. I guess he works for a magazine or a newspaper called ProPublica. And you may want to get in touch with him because from what my attorney says he does good work. The only thing is he scheduled a visit that comes through the kiosk and that gets recorded. Now these phone calls get recorded too, but the thing is if I don't talk to him directly, he can't use anything against me in the case, **but it is very important – very, very important, that people study that U[nited] S[tates] C[ode] and understand what the federal imperialists are doing because these people are straight criminals. They have no authority to do what they're doing**.

In context, when it filed the brief, the government knew that Mr. Croft was talking about sharing his political views on improper delegation of legislative authority and not some attempt to subvert the protective order in this case, yet it edited Mr. Croft's comments such that it appeared otherwise.

**March 7, 2021 Call**

But it doesn't stop there. The government says, "On March 7, 2021, Croft told his partner, 'I'm probably going to be talking to the media soon,' because 'I think I'm gonna need some air support.'"

3

However, Mr. Croft actually said:

**Croft**: I'm probably going to be talking to the media soon.
**Partner**: Why would you do that?
**Croft**: I'm going to need some air support.
**Partner**: What is air support to you?
**Croft**: Some support from people that are free. Some people that actually know what's going on. **Because I found some things in the statutes and codes that are very alarming**.

Again, the government edits Mr. Croft's statements to make it appear as though he is up to something nefarious involving "air support" when he is actually talking about sharing his views on improper delegation of legislative power and perceived misconduct of the federal government.

**Red Herrings**

Paragraphs 4d and 4e are red herrings. The government alleges that Mr. Croft told a reporter that there was material in the discovery that he thought should come out and that Mr. Croft was okay with his statements being attributed to him. Of note, the government does not allege that Mr. Croft actually disclosed any discovery material to this reporter.

Regarding the July 2, 2021 call, the government alleges that someone told Mr. Croft on a call that a CHS was a "rat". The source of that "rat", i.e., cooperating witnesss designation was apparently a BuzzFeed reporter and Mr. Croft is alleged to have repeated it. This simply isn't a disclosure of discovery materials.

4

During the October 6, 2021 call with Reporter 1, Mr. Croft merely expressed that there was more to the story. The government doesn't allege that Mr. Croft disclosed any of this discovery.

**November 15, 2021 call with Reporter 1**

The government references a phone call with "Reporter 1" insinuating that Mr. Croft had improperly disclosed discovery material, but omits the detail which confirms that he hasn't violated the protective order:

> **Mr. Croft:** You know – I'm allowed to talk about the things that happened when they happened. I'm just not allowed to talk about anything in the discovery.
> **Reporter:** So you haven't talked about anything in the discovery.
> **Mr. Croft:** What's that?
> **Reporter:** <u>You haven't talked to me about anything in the discovery.</u>
> **Mr. Croft:** Right. That's the point. I just don't want them trying to charge me with contempt of court to try to get some sort of conviction on me.
> **Reporter:** Have you told your lawyer that you've talked to me?
> **Mr. Croft:** I have not.
> **Reporter:** So that begs like a real other question. So you tell me, do you want me to say "said Barry Croft from an interview in his jail cell". Or do you want me to say "I know this according to sources". What are the terms? You just got to tell me.
> **Mr. Croft:** Well. You know. I know that you guys are pretty good at writing. You guys are pretty good at putting things the way that -- I'm going to leave it to your discretion. I just don't want to get in a thump with my lawyer, but at the same time I want the truth to come out and I'm very concerned about that, to be honest with you. It's very concerning that the government can spin their narrative in the

5

> media, but when it comes to me telling my side they slap this protective order on me. How fair is that?

Mr. Croft has a First Amendment right to speak his mind and be critical of the government. That he believes there is more evidence which should come out is not a violation of the protective order; frankly, it's a fact. More importantly, it doesn't pose a risk to "Red" or "Mark" nor justify that they lie about their names while testifying.

**January 5, 2022 Call**

The government alleges that "On January 5, 2022, Croft told Associate 5, 'But while all that shit was going on, I did an interview with [Reporter 1][2] … and that's where all these articles have been coming out lately about what's really going on.'"

The government wholly omits that earlier in the call when Associate 5 wanted to discuss what a particular witness had said about someone, Mr. Croft replied, "I can't because that's in the discovery and that would get me contempt of court." Put another way, when Associate 5 asked what a witness had said, Mr. Croft refused to answer because he intended to scrupulously honor this Court's orders.

The government knew that, in context, Mr. Croft had explained to Associate 5 that he was bound by the protective order and couldn't discuss certain topics despite the other person asking. The government tries to paint it as though Croft was

---

[2] Interestingly, the government doesn't quote any substance from the call with "Reporter 1", probably because there's nothing in violation of the Court's order.

6

responsible for the BuzzFeed articles of which Mr. Kessler so oft complains, but the truth is that Mr. Croft was explaining that the reporter had done her own work:

> And the thing of it is I have to talk in circles. I can't even really be direct so. A lot of the stuff she's uncovered was just based on her investigative work and she's done some good investigative work. Now there's a lot of shit that's going to come up at trial that hasn't even made it in the papers yet, so I'm really, really feeling confident once we get to trial if the feds think the water's hot now wait until some of the really criminal shit they've let happen – we're talking about Robey being able to force himself sexually on a patriot. We're talking about illegal weapon sales by informants. We're talking about trafficking weapons across state lines. . . . There's so much shit that's going to come out at trial the feds are going to look like the new mafia.

Based on the recorded call, the government knew that Mr. Croft was not claiming responsibility as the source for the BuzzFeed reporting and had not violated the protective order.

**January 30, 2022 Video Podcast / Kaleb Franks Plea Agreement**

Paragraph 5h could fairly be summarized as "Barry Croft knows a guy who feels the same way a large swath of the country does." It says very little about Mr. Croft and says nothing about a violation of a protective order. Similarly, paragraph 5i tells us that someone Croft knows wished to exercise his First Amendment rights to express his displeasure with Mr. Franks' plea agreement. It surely isn't how counsel would choose to spend his free time, but it isn't a violation of the protective order.

## CONCLUSION

Because, even considering the out-of-context phone call excerpts, the government has failed to make a sufficient showing that requiring the agents to

7

testify in their true names would pose an actual and serious risk of harm to the agents and because the Sixth Amendment secures the right to effective cross examination aimed at "exposing falsehood and bringing out the truth" which "must necessarily [start by] ask[ing] the witness who he is and where he lives", the Court should deny the request to testify under a pseudonym. *Smith v. Illinois*, 390 U.S. 129, 131; 88 S. Ct. 748; 19 L. Ed. 2d 956 (1968).

                                                    Respectfully Submitted,

Dated: February 25, 2022                /s/ Joshua A. Blanchard
                                                    Joshua Blanchard
                                                    BLANCHARD LAW
                                                    Attorneys for Defendant Croft
                                                    309 S. Lafayette St., Ste. 208
                                                    Greenville, MI 48838
                                                    616-773-2945
                                                    josh@blanchard.law