UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**UNITED STATES OF AMERICA**
                Plaintiff,

v.

**BARRY CROFT,**
                Defendant.

Case No. 1:20-cr-00183-RJJ

Hon. Robert J. Jonker
Chief United States District Judge

Hon. Sally J. Berens
United States Magistrate Judge

**RESPONSE TO GOVERNMENT MOTION FOR ORDER CONCERNING
MEDIA ACCESS TO TRIAL EXHIBITS**

For the following reasons, Barry Croft through BLANCHARD LAW opposes the relief sought by the government relating to the release of trial exhibits. ECF No. 511, PageID.3867-3873.

**STATEMENT OF FACTS**

Mr. Croft and three co-defendants are proceeding to trial on allegations relating to an alleged plot to kidnap Governor Whitmer. The indictment was the culmination of the creative efforts of at least six paid snitches, two undercover agents, and scores of FBI agents. The agents and snitches recruited the defendants, arranged meetings, paid for travel, paid for hotels, rented cars, produced promotional videos demonstrating explosives, purchased equipment, vetted new members, hatched the ideas, and directed the operations.

As part of the "investigation", the snitches and undercover agents wore recording devices. At some meetings, there were as many as 5 recordings being made of the same event. On the much-discussed "trip up north", the car which the government alleges Mr. Croft occupied, was driven and occupied by at least three paid government actors.

The government is expected to introduce approximately two hours of audio curated from the 1,000+ hours of audio recordings they created during the investigation.

Ten months ago, the parties litigated a very similar issue relating to the release of audio and video recordings from Mr. Croft's detention hearing. *See* BuzzFeed Mot. Compel, ECF No. 193. The government did not take a position at that time. *See* Opinion and Order, ECF No. 254, PageID.1380. However, the government did note a concern that early release of exhibits could pose a potential appellate problem later. Response, ECF No. 204, PageID.1096. Apparently, that's a risk they're now willing to take.

Ultimately, the Court ordered that the audio and video exhibit should not be released "until conclusion of Defendant Croft's trial, conviction by guilty plea, or other order of the Court, whichever comes first." Opinion, ECF No. 254, PageID.1391.

The government's current proposal allows it to play out its case in the media while imposing an effective gag order on the defense until the government has rested its case. *See* Proposed Order, ECF No. 511-1, PageID.3874 (prohibiting

disclosure of any trial exhibits to the media or to anyone on their behalf unless and until they are admitted into evidence[1]).

The proposed order also imposes an unnecessary burden on the defense to meet with the government "immediately upon the conclusion of the trial day" to discuss exhibit disclosures. Counsel's ordinary approach is to immediately meet with his client before the USMS transports him. Such an arrangement will result in delaying the USMS in carrying out their duties daily or require counsel to travel to Newaygo on a daily basis, if the Marshals are unable to delay transport while the parties argue over exhibits.

The proposed order further requires the parties to produce within 24 hours[2] copies of exhibits to "credentialed media" without providing any guidance on who qualifies as "credentialed" media[3]. Unlike the US Attorney's office, none of the defense counsel employ public relations staff to manage this administrative burden.

## LAW AND ARGUMENT

In *United States v. Beckham,* the Sixth Circuit upheld the district court's decision to deny access to copy video and audio recordings admitted at trial because "[w]hen weighing their common-law right to copy exhibits against the defendants'

---

[1] Paradoxically, the proposed order prevents disseminating "exhibits" until they are admitted, but a document only becomes an "exhibit" when it is admitted.
[2] In practice, this means that defense counsel must generate and distribute copies before the next day of trial begins as the 24-hour mark will expire during the trial day.
[3] The government has recently complained about Mr. Croft's appearance on a video podcast which was critical of the government and prosecutors generally. *See* ECF No. 489, PageID.3773. If the Court is inclined to order that the parties release exhibits to "credentialed media", some guidance on how one determines whether to "credential" media or who is the "credentialing" authority will be needed.

3

constitutional right to a fair trial and the court's desire for orderly proceedings, the district court . . . determined that the potential for public benefit was less than the potential harm to the fair and orderly administration of criminal justice." *United States v. Beckham*, 789 F.2d 401, 411 (6th Cir. 1986).

Noting that there was a "scarcity of authority on the subject" the *Beckham* court adopted five factors to be considered by a court in determining whether to permit access under the common law right to records. *Id.* at 414.

The duty of the trial court is "to exercise an informed discretion as to release of the tapes, with a sensitive appreciation of the circumstances that led to their production." *Id.* at 409, *quoting Nixon v. Warner Commc'ns, Inc.,* 435 U.S. 589, 603, 98 S. Ct. 1306,1315, 55 L. Ed. 2d 570 (1978).

### a. The Court's supervisory powers over its own documents.

The first *Beckham* factor is the Court's supervisory authority over its own documents. *Beckham,* 789 F.2d at 414. Trial courts have the power to seal records when the interests of privacy outweigh the public's right to of access. *In re The Knoxville News–Sentinel Co., Inc.,* 723 F.2d 470 (6th Cir.1983) (citing *Brown & Williamson Tobacco Corp.,* 710 F.2d at 1179).

In *United States v. Dimora*, the district court delayed release of videos depicting the defendant pending trial noting that because "these exhibits are videos increases the probability that they will be widely disseminated and thus taint the jury pool." 862 F. Supp. 2d 697, 711 (N.D. Ohio 2012); see also *United States v.*

4

*Dimora*, No. 1:10CR387, 2015 WL 6444886, at *2 (N.D. Ohio Oct. 23, 2015) (releasing the same records after the criminal proceedings had concluded).

Because the public will have access to see and hear the evidence in real time and the media will have the ability to describe the exhibits and testimony, the "incremental gain in knowledge that would result from" having access to the trial exhibits before the conclusion of the trial is negligible and the exhibits should not be released until the trial is complete.

> **b. The benefit to the public from the incremental gain in knowledge that would result from access to the materials in question.**

The Court is going to greater than usual lengths to ensure that the trial is available to the public. The Court has announced that so long as the CARES Act and related authorizations continue, the trial proceedings will be available via an audio bridge for the public to listen from anywhere in the world.

Because the hearing will be open to the public to see and hear the exhibits, the media will be able to write down the exact words from recordings and describe the images and items admitted. The only thing the media will be unable to do during the pendency of the trial is to publish copies of the exact exhibits, reproduce the likenesses of the defendants, and make use of their voices. The "incremental gain in knowledge that would result from" having access to Mr. Croft's voice, likeness, or photographs of exhibits is negligible.

> **c. The degree of danger to petitioner or other persons mentioned in the materials.**

5

Mr. Croft has an interest in impaneling a fair and impartial jury. The media attention has been substantial. In the prior round of litigation on this topic, one outlet characterized Mr. Croft's intentions relating to public knowledge as "Whitmer kidnap suspect doesn't want public to hear god gave him ok"[4]. In reality, Mr. Croft wants the public to hear the evidence in context at a trial and wants the decision to be made within the context of a properly empaneled jury.

Relying on a case out of the Central District of Illinois, the government argues that a juror seeing a replay or excerpt of a videorecorded deposition would not violate or lessen the defendant's constitutional rights. *United States v. Berger*, 990 F. Supp. 1054, 1057-58 (C.D. Ill. 1998). This ignores the significant risk that in a highly publicized trial as this, it is likely that people with the juror's social spheres will know they are serving on this case. As those friends and family members see news reports which contain the evidence from the day, they will be tempted to try to speak to the juror about it. While this is a concern in every case, it is heightened when there is a risk that people approaching the jurors will be armed with (one-sided) information about the case from the government's exhibits.

### d. The possibility of improper motives on the part of the media such as promoting public scandal or gratifying private spite.

There is no evidence of improper motive on behalf of the media.

### e. Any special circumstances in the case.

---

[4] https://www.freep.com/story/news/local/michigan/2021/06/01/michigan-whitmer-kidnap-suspect-barry-croft-jr/5290464001/

This case is arguably the most high-profile case pending in the District and possibly second nationally only to the January 6th Capitol rioters. Selecting a fair and unbiased jury and avoiding improper influence on the jury during the 5–6–week trial will be a challenge. The government recognized the problems in pretrial publicity when it asked undersigned counsel for a protective order. It now wishes to reverse course when the end is in sight.

Permitting the government to distribute trial exhibits throughout the trial increases the risk that people will attempt to discuss the facts of the case with the jurors or influence the jurors by expressing their own opinions before the proofs are concluded.

## CONCLUSION

The Court should deny the government's request to provide daily releases of exhibits and should delay the release of any trial exhibits until the conclusion of the case.

                                      Respectfully Submitted,
                                      **BLANCHARD LAW**

Dated: March 1, 2022                /s/ Joshua A. Blanchard
                                                  Joshua Blanchard
                                                  Attorney for Mr. Croft