UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**UNITED STATES OF AMERICA**
            Plaintiff,        Case No. 1:20-cr-00183-RJJ

                                      Hon. Robert J. Jonker
                                      Chief United States District Judge
v.

                                      Hon. Sally J. Berens
                                      United States Magistrate Judge

**BARRY CROFT,**
            Defendant.
_____/

**DEFENDANT CROFT'S REPLY TO GOVERNMENT RESPONSE
REGARIDNG CONFIDENTIAL HUMAN SOURCE INFORMAITON**

Mr. Croft, by his counsel, replies to the government's response [ECF No. 504, PageID.3847-3849] to Mr. Fox's motion *in limine* [ECF No. 493, PageID.3801-3808]. Mr. Croft has sought to join in the motion but has not offered substantive briefing besides this proposed reply. Mot. Join ECF No. 502, PageID.3837.

### STATEMENT OF FACTS

Defendants are seeking production of documents relating to the operations of confidential human sources including "records of the payments, reimbursements, awards, or any and all other sums paid to CHS 99252 (Dan), CHS 97067 (Steve) and CHS 99802 (Jenny), any admonishments, agreements, or any other non-monetary considerations that were granted or otherwise provided to the Informants". *Id.* at PageID.3807.

1

The government acknowledges the request and admits that there exists a non-disclosure agreement of sorts between CHS Steve and the government. *See* Kessler Letter, ECF No. 493-1, PageID.3809 (admitting existence of "non-disclosure statement" but denying that it required CHS Steve to decline interviews or conceal material information). The government has produced a summary report relating to CHS Steve which had previously been generated for his counsel in his federal criminal prosecution in the Western District of Wisconsin. However, the report does not provide the level of detail necessary to comply with *Brady*, including timing of payments nor the nondisclosure agreement.

Like it previously did with Special Agents Impola and Chambers, in its response, the government now states that it does not intend to call CHS Steve at all nor does it intend to call CHS Jenny in its case-in-chief. Response, ECF No. 504, PageID.3848. The government posits, therefore, that it does not have to turn over information which would allow the defense to impeach its own witness. *Id.*

## LAW AND ARGUMENT

The government cites to *United States v. Kimley*, 60 F. App'x 369, 371 (3d Cir. 2003) for the proposition that there is no requirement that the government disclose to the defense impeachment material for defense witnesses. Response, ECF No. 504, PageID.3848. In *Kimley,* the defendant complained that the government failed to disclose prior to a sentencing hearing that the complaining witness was paid for her assistance in investigating the defendant. *Kimley,* 60 F. App'x at 371. The court found this argument frivolous because the defendant had learned of the

payments prior to the contested sentencing hearing and was able to use the information to attempt to discredit the witness. *Id.*

Unlike *Kimley,* the government has not disclosed the evidence such that it can be used to attempt to discredit a witness nor support the defendants' claims of innocence. While the defense is generally aware that there were payments to the CHSs and there was a non-disclosure agreement with one of them, the amount of the payments, the timing of the payments relative to the CHSs' actions, and the extent of the non-disclosure agreement along with admonishments, authorizations to engage in illegal conduct, and other evidence remains suppressed.

In *In re Sealed Case No. 99-3096*, the government attempted to withhold information sought by the defense relating to payments and benefits received by a cooperating witness who had previously admitted to planting evidence. At trial, the prosecutor argued and the court agreed that *Brady* did not apply because the cooperator was a defense witness. *In re Sealed Case No. 99-3096 (Brady Obligations),* 185 F.3d 887, 892 (D.C. Cir. 1999).

Discussing the difference between classic *Brady* and impeachment evidence, the court noted that "[e]vidence that impeaches a defense witness, by contrast, is not generally favorable to the accused; by reducing the credibility of the defendant's own witness, such impeachment reduces the probability that he will obtain a not guilty verdict." *Id.* at 893. However, the court noted that sometimes witnesses "flip" and "effectively become a government witness" during their testimony. *Id.*

3

More importantly, the court explained that the purpose for obtaining the evidence was not to impeach the cooperator's statement, but to use it as affirmative evidence of the defendant's own innocence. *Id.* The defendant "would not have used evidence of a cooperation agreement to *impeach* [the cooperator's] statement that he planted the guns, but rather to *corroborate* it by exposing his motive for doing so." *Id.* (emphasis in original). Evidence of the payments and the cooperation agreement could have provided "evidence of motive, and any of several kinds of cooperation agreements might have provided it." *Id.*

Here, there are witnesses such as CHS Steve and CHS Jenny who the government now disavows, but who were heavily involved in the evidence collection and investigation of the defendants. Evidence of their cooperation agreements, payments, authorization to engage in illegal conduct, admonishments, and non-disclosure agreements sheds light on their motivations to fabricate the very evidence that the government intends to introduce against the defendants.

Additionally, the government in *In re Sealed Case* conceded that evidence that would prove an agreement that gave rise to motive would be *Brady* material regardless of whether a witness was called by either the prosecution or the defense. *Id.* at 894. This kind of material is exculpatory "in the purest sense" and the fact that a witness was "originally proffered as a defense witness" is irrelevant to the government's *Brady* obligations. *Id.*

It is well-established that a *Brady* violation occurs when "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because

4

it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 280 (S.C. 1999). Prejudice is satisfied when, "withheld evidence [is] 'material'; that is, there must be 'a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *In re Sealed Case No. 99-3096,* 185 F.3d at 892 (quoting *Bagley,* 473 U.S. at 676, 105 S.Ct. 3375)

Therefore, evidence pertaining to the CHS Dan, CHS Steve, and CHS Jenny that would tend to not only impeach, but also affirmatively corroborate their motive to work in concert with the government toward convicting the defendants must be produced.

        Respectfully Submitted,
        **BLANCHARD LAW**

Dated: March 2, 2022         /s/ Joshua A. Blanchard
        Joshua Blanchard
        Attorney for Mr. Croft
        309 S. Lafayette St., Ste. 208
        Greenville, MI 48838
        josh@blanchard.law
        616-773-2945