UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**UNITED STATES OF AMERICA**
      Plaintiff,    Case No. 1:20-cr-00183-RJJ

               Hon. Robert J. Jonker
               Chief United States District Judge

v.

**BARRY GORDON CROFT, JR.,**
      Defendant.
_____/

### MOTION FOR JUDGMENT OF ACQUITTAL

Barry Gordon Croft, Jr., through his attorney Joshua Blanchard, moves the Court to enter a judgment of acquittal pursuant to Fed. R. Crim. P. 29(c).

### PROCEDURAL BACKGROUND[1]

Mr. Croft was tried on the superseding indictment beginning on March 8, 2022. Order, ECF No. 622, PageID.6029. On April 8, 2022, the jury deadlocked and was discharged after five days of deliberation. *Id.* The jury was able to reach a unanimous verdict acquitting co-defendants, Mr. Caserta and Mr. Harris, on all charges. Judgment of Acquittal, ECF No. 612, 613.

---

[1] References to trial proofs are from counsel's best recollection. Counsel has submitted a voucher request for production of the trial transcripts, but the request is outstanding as of filing. To the extent that counsel's recollection differs from the trial transcripts when they are produced, counsel defers to the official transcript.

1

Mr. Caserta was charged with Mr. Croft in Count 1. Superseding Indictment, ECF No. 172, PageID.961. Mr. Harris was charged with Mr. Croft in Counts 1, 2, and 3. *Id.* at PageID.967.

Relevant to Mr. Croft, in Count 1, the government alleged that he agreed with Messrs. Fox, Caserta, Harris, Franks, and Garbin to kidnap Governor Whitmer and that at least one of the overt acts alleged in the indictment was committed by a member of the conspiracy.

In Count 2, the government claimed that Mr. Croft agreed with Messrs. Fox and Harris to use a weapon of mass destruction against persons or property in the United States and that one of them committed one of the overt acts alleged in the indictment.

In Count 3, the government alleged that Mr. Croft and Mr. Harris possessed a destructive device in Luther, Michigan on September 12, 2020.

Viewing the evidence in the light most favorable to the government, as the Court must, the trial testimony was that there was no agreement to commit a kidnapping amongst anyone until at least early August. The thrust of the testimony regarding agreement focused on a supposed agreement between Garbin, Franks, and Harris – the so-called "three musketeers meeting" – during a hike in the woods.

Many of the overt acts alleged in the superseding indictment predated the earliest date on which a jury could have found an agreement. *See* Superseding Indictment, ECF No. 172, PageID.961-976.

## LAW AND ARGUMENT

A motion for acquittal pursuant to Rule 29 raises the question of whether the evidence is sufficient to support a verdict. *United States v. Cox*, 593 F.2d 46, 48 (6th Cir. 1979). "In a sufficiency-of-evidence challenge to a conviction, the question is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Grubbs*, 506 F.3d 434, 438 (6th Cir. 2007) (quoting *United States v. Blakeney*, 942 F.2d 1001, 1010 (6th Cir. 1991)); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

### I. THE COURT SHOULD ENTER A JUDGMENT OF ACQUITTAL ON COUNT 2.

#### a. THE PRECLUSIVE EFFECT OF THE ACQUITTALS OF MR. HARRIS AND MR. CASERTA DEMAND THE COURT ENTER A JUDGMENT OF ACQUITTAL ON COUNT 2.

There is a strong public "interest in giving the prosecution one complete opportunity to convict those who have violated its laws." *Arizona v. Washington,* 434 U.S. 497, 509, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978).

The Double Jeopardy Clause embodies two vitally important interests. First is the "deeply ingrained" principle that "the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *Green v. United States,* 355 U.S. 184, 187–188, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957). The

second interest is the preservation of "the finality of judgments." *Crist v. Bretz,* 437 U.S. 28, 33, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978).

"Although first developed in civil litigation, collateral estoppel has been an established rule of federal criminal law" for more than 100 years. *Ashe v. Swenson*, 397 U.S. 436, 443, 90 S. Ct. 1189, 1194, 25 L. Ed. 2d 469 (1970).

The issue-preclusion component of the Double Jeopardy Clause bars a second contest of an issue of fact or law raised and necessarily resolved by a prior judgment. *Ashe v. Swenson,* 397 U.S. at 443. The Supreme Court has explained that "when an issue of ultimate fact has once been determined by a valid and final judgment" of acquittal, it "cannot again be litigated" in a second trial for a separate offense. *Yeager v. United States*, 557 U.S. 110, 119, 129 S. Ct. 2360, 2367, 174 L. Ed. 2d 78 (2009) (cleaned up). The Court has "squarely held that the Double Jeopardy Clause precludes the Government from relitigating any issue that was necessarily decided by a jury's acquittal in a prior trial." *Id.*

In *United States v Inman,* 534 F. Supp. 3d 843 (W.D. Mich. 2021), this Court explained that "the issue-preclusive aspect of the Double Jeopardy Clause prohibits the government from relitigating issues necessarily resolved in a defendant's favor at an earlier trial presenting factually related offenses." *Id.* at 857, quoting *Currier v. Virginia,* ⎯⎯ U.S. ⎯⎯, 138 S. Ct. 2144, 2158, 201 L.Ed.2d 650 (2018) (Ginsburg, J., dissenting).

In determining "what a jury has necessarily decided" this Court has explained that it must "examine the record of a prior proceeding, taking into

4

account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." *Id.* at 857, quoting *Yeager*, 557 U.S. at 119-120, 129 S.Ct. 2360 (cleaned up).

Count 2 of the indictment jointly charged that Fox, Croft, and Harris[2] conspired to violate 18 USC 2332a(a)(2)(A) by using weapons of mass destruction against persons or property within the United States. Superseding Indictment, ECF No. 172, PageID.967. The indictment specifically alleged that the use of the weapons was in furtherance of the alleged plot to kidnap the Governor, by harming and hindering the Governor's security detail and any responding law enforcement. *Id.*

The jury charge asked the jury to resolve three questions:

    (A) Whether "two or more persons conspired, or agreed, to commit the crime of use of a weapon of mass destruction."

    (B) Whether "the defendants knowingly and voluntarily joined the conspiracy."

    (C) Whether "a member of the conspiracy did one of the overt acts described in the Superseding Indictment for the purpose of advancing or helping the conspiracy."

The overt acts alleged are contained within paragraphs 20 through 27 of the Superseding Indictment. To secure a conviction, the government must prove at least

---

[2] While the indictment also includes boilerplate "known and unknown" conspirator language. There were no proofs presented at trial relating to unknown or unnamed conspirators beyond Mr. Garbin.

one of the overt acts were committed. *Wilkes v. United States*, 291 F. 988, 995 (6th Cir. 1923); *United States v. Nowak*, 448 F.2d 134, 140 (7th Cir. 1971). And the overt act must have been committed by a member of the conspiracy. *United States v. Beverly*, 369 F.3d 516, 532 (6th Cir. 2004).

In acquitting Mr. Harris on Count 2, the jury necessarily either determined that he did not knowingly agree and join the conspiracy or that, if he did, none of the overt acts were proven. The narrowest view of the jury's finding is that Mr. Harris did not agree to or knowingly join the conspiracy, because if the jury found that none of the overt acts were committed, it would have been bound to acquit Mr. Croft since there would have been no overt act in furtherance of the charged conspiracy.

Therefore, the preclusive effect of the acquittal of Mr. Harris is to prevent relitigating those overt acts involving Mr. Harris because he has been determined not to be a member of the alleged conspiracy and therefore could not supply the requisite overt act as a non-conspirator.

Striking the overt acts alleged to have been committed by Mr. Harris based on the jury's determination that Mr. Harris was not involved in any conspiracy leaves only paragraphs 22, 23, 24, part of 25, 26, and part of 27.

Paragraph 22: While there was much testimony at trial about the "balloons" that went "poof" and let off smoke, but completely failed to detonate, there were no proofs that this was in furtherance of the use of a weapon of mass destruction. Of note, unlike paragraph 23, the Grand Jury didn't even allege that this activity was

6

in furtherance of the plot. *See United States v. Bradley*, 917 F.3d 493, 505 (6th Cir. 2019) (noting that the government must show "*one* of the conspirators ... knowingly committed at least one overt act charged in the indictment ... [and] that such overt act was knowingly done in furtherance of some object or purpose of the conspiracy as charged.") (cleaned up).

Paragraph 23: While there was proof that Mr. Croft came to Michigan, there were no proofs that the purpose was to test IEDs in furtherance of a plot to kidnap the governor. In fact, the trial proofs focused, albeit lightly, on blowing up a bridge as the use of the WMD, not the use of a firework in the woods.

Paragraph 24: The trial proofs conclusively established that Mr. Croft did not inspect bridge and that Mr. Fox only did so at the direction of UCE Red. While the government presented proofs that Mr. Fox took a photo under the bridge, there was no explanation of how this did anything to further the supposed plot. To the contrary, the trial proofs established that the purpose of this photo was so that the government would have a piece of evidence to use against Mr. Fox at trial. The trial proofs also conclusively established that Mr. Croft was not told the destination of the evening trip until it was well underway with him in the back seat of a government car filled with government agents.

Paragraph 25: The uncontroverted trial testimony, including from Mr. Harris, was that Harris was the person who detonated the device in question. However, the jury acquitted him on count 3 relating to this device. Because the jury

7

found that Mr. Harris was not guilty of count 3, it cannot supply the basis for the overt act in count 2.

Paragraph 26: The trial proofs established that while UCE Red tried to sell explosives and quoted a vague price, there was never an order for $4,000 worth of explosives. There was no handshake, no exchange of money, and no agreement.

Paragraph 27: The trial proofs established that the purpose of the Ypsilanti trip was for beer and hot wings, not bombs. Counsel's recollection is that during a hearing without the jury present, the Government specifically disavowed the Ypsilanti-as-a-down-payment theory. In any case, the government put on no proofs regarding a supposed down payment toward a bomb as alleged in paragraph 27 of the superseding indictment.

After setting aside the trial proofs relating to overt acts allegedly committed by a person who was necessarily determined not to be a member of the conspiracy, the remaining evidence is insufficient for a rational jury to conclude beyond a reasonable doubt that Mr. Croft is guilty of Count 2. Therefore, the Court should grant a judgment of acquittal pursuant to Rule 29(c). Alternatively, if the Court does not grant a judgment of acquittal, it should bar relitigating the overt acts which were necessarily determined by Mr. Harris' acquittal.

    **b. ALTERNATIVELY, THERE WAS INSUFFICIENT EVIDENCE PRESENTED THAT ADAM FOX AND BARRY CROFT AGREED TO COMMIT THE CRIME OF USE OF A WEAPON OF MASS DESTRUCTION.**

Much of the trial proofs relating to Count 2 focused on Mr. Croft and Mr. Harris. Now that Mr. Harris has been acquitted, the government is limited to

8

arguing that Mr. Croft and Mr. Fox agreed with each other to commit the crime. There were simply insufficient proofs from which a rational jury could find that Mr. Croft and Mr. Fox agreed to commit the crime of use of WMD.

There was simply no presentation of discussions between Mr. Croft and Mr. Fox in writing or orally relating to the supposed plot (or really anything else). While there was testimony that Mr. Croft was in the government vehicle that transported Mr. Fox and the FBI agent to inspect the bridge, there were no proofs that Mr. Croft understood what they were doing or agreed to it.

There was testimony that after the agent brought Mr. Fox back to the vehicle, Mr. Croft proposed the alternative of cutting down all of the trees and radio towers along the roadways. If anything, this shows that Mr. Croft did not agree with any idea the Government may have proposed regarding the bridge. Similarly, in a clip that the government claims proved an agreement to purchase a $4,000 bomb, Mr. Croft's only comment is "[unintelligible] my eye's poppin'". Counsel has no idea what this means and suspects it was Mr. Croft having a conversation with someone else, but in any event, it does not evidence an agreement with Mr. Fox to use a WMD.

Because there is insufficient evidence from which a jury could find that Mr. Croft and Mr. Fox agreed to commit the crime of conspiracy to use a weapon of mass destruction in furtherance of the supposed plot to kidnap the governor, the Court should enter a judgment of acquittal.

## II.  THERE WAS INSUFFICIENT EVIDENCE PRESENTED TO CONVICT MR. CROFT OF CONSPIRACY TO KIDNAP AND HE IS ENTITLED TO A JUDGMENT OF ACQUITTAL.

The earliest date that any government trial witness asserted that there was an agreement to kidnap the governor was early August 2020. Mr. Croft's only involvement after August 2020 was at the Luther, Michigan "FTX" in September 2020.

The trial testimony was that Mr. Croft didn't participate in the firearms training / shoot house at Luther and that he didn't know the purpose of the trip to Elk Rapids until he had been transported by the Government to either Cadillac or Elk Rapids. There was no testimony that Mr. Croft ever exited the vehicle or otherwise participated in the surveillance attempts in the Elk Rapids area. Following the completion of the trip, Mr. Croft exited the vehicle driven by the government and got in a car with a different person who took him back to a hotel rather than returning to the Luther FTX site with others.

There was insufficient evidence from which a jury could conclude beyond a reasonable doubt that Mr. Croft conspired with Mr. Fox, Mr. Franks, or Mr. Garbin[3] to kidnap the governor. To the contrary, the evidence shows that Mr. Croft had minimal contact with these people and never agreed to commit a crime with them. While government presented mountains of "predisposition" evidence, short snippets of out-of-context audio, and so-called "reenactments" of things that never occurred, there was simply insufficient evidence from which a jury could conclude beyond a

---

[3] Mr. Garbin is the only unnamed conspirator for which the government attempted to put on any proofs.

reasonable doubt that Mr. Croft ever agreed with anyone to kidnap Governor Whitmer.

### III. THERE WAS INSUFFICIENT EVIDENCE PRESENTED TO CONVICT MR. CROFT OF POSSESSION OF AN UNREGISTERED DESTRUCTIVE DEVICE AND HE IS ENTITLED TO A JUDGMENT OF ACQUITTAL.

The Superseding Indictment charged Mr. Croft and Mr. Harris with possession of an unregistered destructive device on September 13, 2020, in Lake County, Michigan. The jury acquitted Mr. Harris of this charge and was unable to reach a verdict as to Mr. Croft.

The jury was instructed that to find Mr. Croft guilty, they would have to find beyond a reasonable doubt that:

(A) First, that the defendants knowingly possessed a "destructive device." A destructive device does not include any device that was not designed or redesigned for use as a weapon.

(B) Second, the defendants knew the object was a "destructive device."

(C) Third, the destructive device was not registered to the defendants in the National Firearms Registration and Transfer Record.

As discussed above, the acquittal of Mr. Harris has preclusive effect as to Mr. Croft. In acquitting Mr. Harris, the jury necessarily determined that either the device was not a "destructive device" or that Mr. Harris did not know that the device was a "destructive device". It is not possible to logically determine which conclusion the jury reached, but either entitles Mr. Croft to an acquittal.

11

If the conclusion was that the device was not a "destructive device", the government should be precluded from relitigating that issue and Mr. Croft is entitled to an acquittal. If, however, the Court concluded that the jury's verdict means that the jury determined Mr. Harris did not know the object was a "destructive device", Mr. Croft is still entitled to an acquittal because the government failed to present any more evidence regarding Mr. Croft's knowledge of the status of the device as compared to Mr. Harris.

## CONCLUSION

Because of the preclusive effect of the acquittals of Mr. Harris and Mr. Caserta as well as the insufficient evidence presented by the government at trial, Mr. Croft requests the Court enter a judgment of acquittal pursuant to Rule 29(c) on each count of the superseding indictment.

Respectfully Submitted,

Dated: April 22, 2022

/s/ Joshua A. Blanchard
Joshua Blanchard
BLANCHARD LAW
Attorneys for Defendant Croft
309 S. Lafayette St., Ste. 208
Greenville, MI 48838
616-773-2945
josh@blanchard.law

**Certificate of Compliance with LCrR 47.2(b)(ii)**

I certify that this motion and brief contains 2,916 countable words as defined by LCrR 47.2(b)(i) and as calculated by Microsoft Word 16.55.

Dated: April 22, 2022

/s/ Joshua A. Blanchard
Joshua A. Blanchard